

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 15 2016

_madsen C.J._
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Dec 15 2016

_Susan L. Carl_

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Personal Restraint of | ) | |
| | ) | No. 89585-6 |
| NOEL EVAN CALDELLIS, | ) | |
| | ) | |
| Petitioner. | ) | En Banc |
| | ) | |
| | ) | Filed DEC 15 2016 |
| | ) | |
| ———————————————— | ) | |

GONZÁLEZ, J. — Noel Caldellis shot into a crowd of people outside a party, killing one. He was charged with first degree murder "[u]nder circumstances manifesting an extreme indifference to human life" under RCW 9A.32.030(1)(b). The jury was given a to-convict instruction modeled on the relevant pattern jury instruction, which itself was modeled on subsection (1)(b). After Caldellis's trial, the pattern jury committee amended the relevant pattern instruction to require an additional "element" that "the defendant knew of and disregarded the grave risk of death." Among other things, Caldellis contends his conviction should be set aside because the jury was not required to find this new "element" in his case. We hold that the instruction given in Caldellis's trial included the required elements of the

crime and was sufficient. Caldellis also asks for an evidentiary hearing to develop the factual basis for some of his claims. We conclude he has not made the requisite showing for such a hearing. Accordingly, we dismiss his personal restraint petition as meritless.

## BACKGROUND

One fall night in September 2006, Caldellis and a group of friends were driving to a house party in Seattle where they expected to watch two people fight.[1] On their way to the party, the group stopped at a store to buy food and get directions. Two members of the group got into a heated argument. One pulled a handgun. Caldellis stepped in and took the gun away.

Eventually, the group arrived at the party. As Caldellis and his friends approached the house, approximately 30 people flooded outside, yelling profanities and racial slurs. A brawl immediately broke out. One witness testified that he saw someone run up to Caldellis as if to attack him and that Caldellis dodged and punched the attacker. Caldellis then pulled out a gun and fired it twice in the air. He waved the gun briefly before firing at least two horizontal—and ultimately fatal—shots into a group of people. One witness testified she saw "somebody fall" to the ground "in the driveway." 11 Verbatim Report of Proceedings (VRP) (Nov. 26, 2007) at 1605, 1604.

---

[1] A full statement of the facts of the underlying crimes is available in the Court of Appeals' unpublished opinion, *State v. Caldellis*, noted at 151 Wn. App. 1012, 2009 WL 2151856.

After shots were fired, Caldellis and others left in their cars. In the "pandemonium" of the fighting and gunshots, many of the partygoers rushed back into the house and called the police. 8 VRP (Nov. 19, 2007) at 1118. Snohomish County police officers arrived at the house and found Jay Clements lying on the ground with two gunshot wounds.

The next day, police arrested Caldellis. After being advised of his constitutional rights, Caldellis admitted that he had taken the gun with him to the party and brandished it when the fighting began. He also told the police that he fired two shots into the air and then fired into a crowd of people. Caldellis recalled that he did such a "stupid" thing because he was drunk. 12 VRP (Nov. 27, 2007) at 2013.

The State charged Caldellis with murder and assault. At trial, Caldellis argued self-defense as to the assault charges and that he fired the fatal shot accidentally because he feared he would be attacked. Caldellis was convicted of first degree murder based on extreme indifference to life and two counts of second degree assault. The jury found he committed these crimes while armed with a firearm. Caldellis appealed, and in an unpublished decision, the Court of Appeals affirmed his murder conviction and reversed the assault convictions for reasons that are not before us. *State v. Caldellis*, noted at 151 Wn. App. 1012, 2009 WL 2151856.

3

In 2011, Caldellis filed a timely personal restraint petition (PRP) challenging his first degree murder conviction. Caldellis argues that the prosecutor committed misconduct and violated due process of law by stating the law permits conviction on less proof than legally required and improperly commented on Caldellis's right not to testify. He also contends his trial counsel provided ineffective assistance for failing to propose an instruction containing all elements of murder by extreme indifference, propose a self-defense instruction for that charge, notice jury members and the judge sleeping and move for a mistrial, and object to and move for a mistrial based on the prosecutor's remarks. Finally, he contends his murder conviction should be reversed or he should be given a reference hearing based on his claim that the judge and jurors slept during his trial.[2]

---

[2] The State moved that this court require Caldellis to designate his issues for review, noting that no statement of issues was presented in his motion for discretionary review. We granted the State's motion. Caldellis submitted a supplemental brief addressing many, but not all, of the issues raised in his motion for discretionary review. In his original PRP, Caldellis argued that his public trial rights were violated when the judge allowed a confidential jury questionnaire to be used in jury selection without first making the *State v. Bone-Club*, 128 Wn.2d 254, 259, 906 P.2d 325 (1995), inquiry and that his attorney was ineffective for failing to prevent him from waiving that right. Caldellis does not specifically designate the public trial issues in his supplemental brief, although they were raised in his motion for discretionary review. Caldellis also argues that his trial counsel was ineffective for failing to object to the allegedly sleeping judge and jurors and moving for a mistrial. Caldellis's PRP alleges that the to-convict instruction was defective because it failed to inform the jury that Caldellis had to have acted with extreme indifference to human life in general, not only to the victim's life. He further contends the prosecutor misstated the law by implying Caldellis need only manifest indifference to the victim. But because Caldellis does not specifically designate these issues for review, they are not properly before this court and we decline to reach them.

4

In 2013, the acting chief judge of the Court of Appeals dismissed the petition in a 17-page ruling. The order did not explicitly state that Caldellis's petition was frivolous, but under the Rules of Appellate Procedure, only frivolous PRPs are dismissed by order of a single judge. Order of Dismissal, *In re Pers. Restraint of Caldellis*, No. 67090-5-1 (Wash. Ct. App. Oct. 25, 2013) (appended to Mot. for Discr. Review, *In re Pers. Restraint of Caldellis*, No. 89585-6 (Wash. Nov. 25, 2013)) (citing RAP 16.11(b)); *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 684, 363 P.3d 679 (2015). Caldellis moved for discretionary review, arguing procedurally that his case should have been either referred to a panel of judges for consideration on the merits or remanded to the Court of Appeals for an evidentiary hearing. On the merits, Caldellis renewed the majority of his claims for relief. We accepted review. *In re Pers. Restraint of Caldellis*, __ Wn.2d __, 367 P.3d 1083 (2016).

ANALYSIS

1. RAP 16.11(b) AND NONFRIVOLOUS PETITIONS

The acting chief judge dismissed Caldellis's petition under RAP 16.11(b). Under this rule, the chief judge or acting chief judge of the Court of Appeals may dismiss a PRP if it is "frivolous." If the PRP is not frivolous and can be decided on the record, the chief judge "will" refer the petition to a panel of judges for consideration on the merits. RAP 16.11(b). In *Khan*, we held that "a personal restraint petition is frivolous where it fails to present an arguable basis for

5

collateral relief either in law or in fact, given the constraints of the personal restraint petition vehicle." 184 Wn.2d at 686-87 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)). A petition that raises issues grounded on an arguable basis for relief and is not procedurally barred is not frivolous under RAP 16.11(b). *Id.* at 687. Caldellis's PRP was not referred to a panel under RAP 16.11(b), thus we infer the chief judge found it to be frivolous. As will be discussed below, Caldellis's jury instruction and prosecutorial misconduct claims presented arguable bases for relief and were not procedurally barred. Therefore, it was error to dismiss his PRP as frivolous under RAP 16.11(b) instead of referring it to a panel of judges for determination on the merits. However, this error is not grounds for relief on the underlying PRP or grounds for a do-over at the Court of Appeals. As with *Khan*, we elect to reach the merits ourselves. *See id.* (citing RAP 13.5A(a)(1); RAP 13.4(b)).

2. JURY INSTRUCTIONS AND INEFFECTIVE ASSISTANCE OF COUNSEL

Caldellis contends that he was denied due process because the to-convict instruction omitted an allegedly essential knowledge element, that he "knew of and disregarded" the grave risk of death. Mot. for Discr. Review at 3-9. Caldellis also argues his trial and appellate counsel were ineffective in failing to propose a "correct" instruction and for failing to raise the issue on direct review. *Id.* at 6.

6

Elements of a crime are the constituent parts of a crime, usually consisting of conduct, knowledge, and causation. *See State v. Fisher*, 165 Wn.2d 727, 754, 202 P.3d 937 (2009) (quoting BLACK'S LAW DICTIONARY 559 (8th ed. 2004)). "At common law it was said that 'to constitute a crime against human laws, there must be, first, a vitious will; and, secondly, an unlawful act consequent upon such vitious will.'" *State v. Eaton*, 168 Wn.2d 476, 481, 229 P.3d 704 (2010) (quoting 5 WILLIAM BLACKSTONE, COMMENTARIES *21). A trial court must instruct the jury on all essential elements of the charged crime. *State v. Linehan*, 147 Wn.2d 638, 653-54, 56 P.3d 542 (2002). Failure to do so relieves the State of its burden of proving every element of the crime beyond a reasonable doubt. *Id.* This is reversible error unless the court is convinced, beyond a reasonable doubt, that the error did not contribute to the verdict. *State v. Brown*, 147 Wn.2d 330, 340-41, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

The first degree murder by extreme indifference statute states in relevant part:

> (1) A person is guilty of murder in the first degree when:
>  . . . .
> (b) Under circumstances manifesting an extreme indifference to human life, he or she engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person.

RCW 9A.32.030(1)(b).

In Caldellis's case, the trial court gave the following instruction on murder by extreme indifference:

> (1) That on or about the 3rd day of September, 2006, the defendant discharged a firearm;
> (2) That the conduct of the defendant created a grave risk of death to another person;
> (3) That the defendant engaged in that conduct under circumstances manifesting an extreme indifference to human life;
> (4) That Jay Daniel Clements died as a result of defendant's acts; and
> (5) That the acts occurred in the State of Washington.

Resp. to PRP, Ex. 2, at 7 (Instr. 4).

This instruction was based on the then-current Washington pattern jury instructions and tracks the statutory elements of murder by extreme indifference. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 26.06 (2d ed. 1994) (WPIC); RCW 9A.32.030(1)(b). In 2008, the committee on pattern instructions changed the WPIC, adding the element that "the defendant knew of and disregarded the grave risk of death." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 26.06, at 373 (3d ed. 2008).

> The revised instruction provides in relevant part:
> (1) That on or about __(date)__, the defendant created a grave risk of death to another person;
> (2) That the defendant *knew of and disregarded* the grave risk of death;
> (3) That the defendant engaged in that conduct under circumstances manifesting an extreme indifference to human life; [and]
> (4) That (name of decedent) died as a result of defendant's acts.

*Id.* (emphasis added).

8

The committee explained that the new "requirement" reflected Division Three's holding in *State v. Barstad*, 93 Wn. App. 553, 568, 970 P.2d 324 (1999). 11 WPIC 26.06, at 374 (3d ed. 2008). In *Barstad* the defendant was convicted of first degree murder by extreme indifference for killing two people in a multicar collision while driving intoxicated. 93 Wn. App. at 555-56. Barstad challenged a definitional instruction given in his case that said in part that "'[a] person engages in conduct manifesting an extreme indifference to human life when . . . [that person] knows of and disregards the grave risk of death to others.'" *Id.* at 564-65 (quoting record). Barstad had proposed an instruction that would have said, "'A person manifests an extreme indifference to human life when [that person] acts in a manner *calculated* to put the lives of many persons in jeopardy, *with full consciousness of the probable consequences.*'" *Id.* at 565 (quoting record). The Court of Appeals found that the trial court did not err in rejecting Barstad's proposed instruction and that he was able to argue his theory of the case to the jury under the instructions given. *Id.* at 565-66. The "knew of and disregarded" grave risk of death to others instruction was not requested or given in Caldellis's trial.

Caldellis argues his to-convict instruction conflicts with *Barstad* and by omitting the "knew and disregarded" language, the instruction was constitutionally defective. In its order dismissing Caldellis's petition, the Court of Appeals concluded, and the State echoes in its response brief, that the instructions in

9

Caldellis's case accurately stated the knowledge requirement of extreme indifference and characterized the 2008 revision as adding a "definitional element." Order of Dismissal at 6; Resp. to PRP at 11-14.

But *Barstad* simply does not hold that "murder by extreme indifference" jury instructions are constitutionally deficient if they do not contain the "knew of and disregarded" instruction. That question was not before the *Barstad* court, and no subsequent opinions we have found have so held. Perhaps out of an excess of caution, the pattern jury instruction committee added the *Barstad* language. Nevertheless, it stretches credulity to call the 2008 revised language an additional "element" to the crime of extreme indifference murder.[3] The State correctly notes that post-*Barstad*, courts have held that the elements of first degree murder under RCW 9A.32.030(1)(b) remain unchanged. *State v. Yarbrough*, 151 Wn. App. 66, 82, 210 P.3d 1029 (2009); *State v. Asaeli*, 150 Wn. App. 543, 580, 208 P.3d 1136 (2009).

Indeed, the comment to WPIC 26.06 states that the revised instruction includes not an additional "element," but rather "a *requirement* that the defendant knew of and disregarded the grave risk of death." 11 WPIC 26.06, at 374 (3d ed. 2008) (emphasis added). Mere "[c]larification of the standard instruction does not

---

[3] We are not asked to decide whether the addition of the "knew of and disregarded" language to the revised WPIC is an improvement. We note in passing we are not sanguine that it is.

amount to an indictment of earlier versions." *State v. Holzknecht*, 157 Wn. App. 754, 765, 238 P.3d 1233 (2010).

We conclude that not including the "knew of and disregarded" language in Caldellis's jury instructions was not error. The jury instructions appropriately tracked RCW 9A.32.030(1)(b) and contained the required mens rea element— "manifesting an extreme indifference to human life." Therefore, the instructions were sufficient.

Caldellis also argues that he is entitled to relief due to the "defective" jury instructions described above because his trial counsel failed to object or propose a legally correct instruction and because his appellate counsel was ineffective for failing to raise the issue on direct appeal. To establish ineffective assistance, Caldellis bears the burden of showing both (1) his defense counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him. *Khan*, 184 Wn.2d at 688 (citing *State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010)). Since the instruction that was given was correct and since Caldellis fails to show why he could not argue his theory of the case to the jury under it, these claims fail.

3. FAILURE TO REQUEST A SELF-DEFENSE INSTRUCTION

At trial, Caldellis sought and received self-defense instructions for the two assault charges.[4] He did not ask for a self-defense instruction for the murder charge. Caldellis contends that his attorney incorrectly believed the claim of accidental shooting precluded an instruction for self-defense. He argues that the evidence at trial would have supported a self-defense instruction for the murder charge, and that the failure to request such an instruction was deficient performance and prejudicial. We disagree.

Again, to establish ineffective assistance, Caldellis must show (1) his defense counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him. *Khan*, 184 Wn.2d at 688 (citing *A.N.J.*, 168 Wn.2d at 109). The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation. To prevail on an ineffective assistance claim, a defendant alleging ineffective assistance must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Accordingly, the defendant bears the burden of establishing deficient performance. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

---

[4] Both assault charges were reversed on appeal for failure to give the "no duty to retreat" instruction. *Caldellis*, 2009 WL 2151856, at *7.

"Reasonable conduct for an attorney includes the duty to research relevant law." *Kyllo*, 166 Wn.2d at 862 (citing *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

"When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Id.* at 863; *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994) ("[T]his court will not find ineffective assistance of counsel if 'the actions of counsel complained of go to the theory of the case or to trial tactics.'" (quoting *State v. Renfro*, 96 Wn.2d 902, 909, 639 P.2d 737 (1982))). A criminal defendant can rebut the presumption of reasonable performance by demonstrating that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Not all defense counsel's strategies or tactics are immune from attack. "'The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

Prejudice is established when there is a reasonable probability that but for counsel's errors, the result of the trial would have been different. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2000). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Caldellis relies exclusively on trial counsel's declaration that he characterizes as a mistake. He argues his attorney "candidly admit[ted]" that there was "no tactical reason" not to seek a self-defense instruction as to the murder count. PRP at 33. But defense counsel's declaration does not state that no tactical reason existed for failing to seek a self-defense instruction. Instead, it states that trial counsel believed there was "no tactical reason . . . not to propose an instruction making it clear that the defendant must endanger human lives, as opposed to a human life." PRP, App. B para. 12 (McFarland Decl.). The declaration states that the only instruction "that fit the evidence and the defense theory of the case were instructions related to excusable homicide." *Id.* para. 10.

At trial, the defense argued primarily that the State failed to prove Caldellis's shots caused Clements's death. The defense also argued that if the shots did cause Clements's death, it was excusable homicide because Caldellis did not intend to shoot him and "the shots were fired in lawful defense of others." *Id.* para. 9. The evidence offered at trial, if believed by the jury, supported Caldellis's excusable homicide theory: Caldellis admitted that he shot into the crowd when it did not disperse; he was not aiming at anyone specifically; witnesses testified that he shot into the air first, then horizontally toward the group. Trial counsel

14

emphasized these points in closing arguments, and excusable homicide instructions were given to the jury.

The decision not to request a self-defense instruction in light of the defense's theory of excusable homicide was a legitimate trial strategy. *See Kyllo*, 166 Wn.2d at 863. "While a defendant may take actions in self-defense that lead to an accidental homicide," under controlling law, one cannot "kill by accident and claim that the homicide was justifiable." *State v. Brightman*, 155 Wn.2d 506, 525, 122 P.3d 150 (2005). Where a homicide is committed by accident, excusable homicide is the proper defense. *Id.*[5] Trial counsel successfully and reasonably advocated for an excusable homicide instruction and ably argued the theory to the jury. He did not render deficient performance.

4. PROSECUTOR'S COMMENTS ON CALDELLIS'S RIGHT NOT TO TESTIFY AND INEFFECTIVE ASSISTANCE OF COUNSEL

Caldellis contends that the prosecutor improperly told the jury to infer guilt based on Caldellis's decision not to testify. He also contends that his trial and appellate counsel were ineffective for failing to object to the comments or raise them on appeal. We find that these contentions are based on a strained

---

[5] We recognize that, theoretically, a situation may occur where the lawful use of force results in an accidental death, perhaps allowing a self-defense argument for accidental killing. *Brightman*, 155 Wn.2d at 525. Caldellis argues that he fired his gun because he feared bodily injury or death, he was intoxicated, and he was reacting to the chaotic melee occurring around him. He further asserts that because he did not shoot to kill, he was not intentionally using lethal force. But Caldellis admitted to firing shots into a group of people. That is lethal force. Caldellis has not shown that his use of force was lawful.

15

characterization of the State's argument. The prosecutor's comments were a fair response to defense counsel's closing arguments.

Those charged with a crime have a constitutional right not to testify against themselves. U.S. CONST. amend. V; WASH. CONST. art. I, sec. 9. It is improper for the State to make closing arguments inferring guilt from a defendant's silence. *State v. French*, 101 Wn. App. 380, 386, 4 P.3d 857 (2000) (citing *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)); *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996) (citing *State v. Foster*, 91 Wn.2d 466, 473, 589 P.2d 789 (1979)). The State is, however, entitled to make a fair response to the defense attorney's arguments. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). The claimed misconduct is reviewed in light of all the arguments, issues, evidence, and jury instructions. *State v. Davis*, 141 Wn.2d 798, 872, 10 P.3d 977 (2000) (citing *State v. Gentry*, 125 Wn.2d 570, 640, 888 P.2d 1105 (1995)). If counsel does not object at trial, the claim is waived unless conduct is "so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997) (citing *Russell*, 125 Wn.2d at 86). To establish ineffective assistance of appellate counsel, Caldellis must show any legal issue his counsel failed to raise was meritorious and demonstrate prejudice.

16

During closing arguments, defense counsel suggested many reasons why Caldellis might not testify in his trial. Defense counsel mentioned Caldellis's age (only 18 at the time of the trial), immaturity, inability to express himself, nervousness and fear of testifying, and perhaps avoiding distressing cross-examination. In response, the prosecutor argued that defense counsel "forgot a big" reason why Caldellis did not testify, stating that he could "think of one more." 20 VRP (Dec. 10, 2007) at 3275-76. The defense objected but withdrew the objection almost immediately.

Caldellis contends that the "big" reason suggested by the prosecutor that he did not testify was because he was guilty. The State argues that the prosecutor meant that Caldellis did not testify because he had nothing to say that would help him. We find the defense's argument invited the fair response given.

Similarly, as this was not error, neither trial nor appellate counsel was deficient for failing to object to the prosecutor's comments or assign error on appeal. The jury in Caldellis's case received an instruction explaining that "[t]he defendant is not compelled to testify, and the fact the defendant has not testified cannot be used to infer guilt or prejudice him in any way." Resp. to PRP, Ex. 2, at 28 (Instr. 25). The jury was also instructed that they "must disregard any remark, statement, or argument that is not supported by the evidence or the law in [the] instructions." *Id.* at 3 (Instr. 1). Caldellis argues that withdrawing trial counsel's

17

objection to the prosecutor's comments "could have only signaled that there was nothing improper about this argument." PRP at 50. He also asserts that his appellate counsel provided ineffective assistance by failing to assign error on appeal. But Caldellis does not show how the result of his trial would have been different had defense counsel maintained his objection, especially in light of the curative instructions that were given to the jury. Caldellis fails to demonstrate prejudice. This claim is meritless.

5. STRUCTURAL ERROR AND ALLEGEDLY SLEEPING TRIAL JUDGE AND JURORS

Lastly, Caldellis claims that structural error occurred at trial due to allegedly sleeping judge and jurors. Alternatively, he argues he should be given an evidentiary hearing to develop the factual record regarding those claims. In support, Caldellis provides affidavits from his parents and aunt, and a declaration from his trial attorney that suggest the judge and jurors fell asleep. The trial judge, parents of the victim, prosecutor, and lead detective assigned to Caldellis's case provided affidavits denying that the judge or any jurors slept at the trial.

First, Caldellis fails to show that this was structural error, mandating reversal without any showing of prejudice. He simply asserts that it is. But very few errors are structural, and very few errors are presumed prejudicial. *Khan*, 184 Wn.2d at 691 (citing *Washington v. Recuenco*, 548 U.S. 212, 218, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006); *United States v. Cronic*, 466 U.S. 648, 666, 104 S. Ct. 2039, 80

L. Ed. 2d 657 (1984)).[6] Even the failure to instruct the jury on an element of the crime charged or basing a sentence on a fact not charged and proved to the trier of fact have not been found to be structural error by the United States Supreme Court. *Recuenco*, 548 U.S. at 220. Caldellis claims that because the judge slept through portions of the trial, he was functionally absent. But taking all reasonable inferences from the declarations he provides, Caldellis failed to show that the trial judge slept through any critical testimony or parts of the trial. Nor does he argue that the trial judge failed to make a ruling or made a ruling that was impacted by any sleeping during trial.[7] Caldellis's claim that the trial judge was effectively absent is conclusory, which is insufficient to merit review in a personal restraint petition. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

---

[6] We caution, however, that having a judge or juror sleep during a trial could be structural error. Several courts have found ineffective assistance of counsel when defense counsel has slept through substantial or critical portions of a trial. *Burdine v. Johnson*, 262 F.3d 336, 348 (5th Cir. 2001) (unconscious counsel functionally absent throughout critical stages of trial warranted presumption of prejudice); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984) (functionally treating sleeping defense counsel as structural error). A sleeping defense attorney, which implicates the right to counsel, was not at issue in this case, and the analysis of a sleeping judge or juror may be different. Here, however, none of Caldellis's declarations establish that the judge or jurors slept through a substantial portion of his trial.

[7] Division Two of the Court of Appeals recently rejected an identical argument in the unpublished portion of *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 357 P.3d 668 (2015). Schreiber, like Caldellis, argued that the judge slept during trial and was thus functionally absent. *Schreiber*, No. 40553-9-II, slip op. (unpublished portion) at 13-14 (Wash. Ct. App. July 28, 2015), http://www.courts.wa.gov/opinions/. The Court of Appeals declined to adopt Schreiber's invitation to apply structural error to this claim. *Id.*

19

Second, Caldellis claims that multiple jurors slept during trial. A sleeping juror may prejudice the defendant's due process rights and right to an impartial jury. *State v. Hughes*, 106 Wn.2d 176, 204, 721 P.2d 902 (1986); *see also Tanner v. United States*, 483 U.S. 107, 126-27, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987). Caldellis does not state how long the jurors slept or what specific testimony they missed by sleeping. He has not shown specific evidence of prejudice due to the drowsiness of any juror. *See Hughes*, 106 Wn.2d at 204.

Caldellis also argues that he has presented sufficient evidence to justify an evidentiary hearing regarding the alleged sleeping jurors and trial judge. A hearing is not warranted based on the evidence presented. A petitioner must state with particularity facts that, if proved, would entitle the petitioner to relief. *Rice*, 118 Wn.2d at 886. "Bald assertions and conclusory allegations" are not sufficient. *Id.* If the evidence is based on knowledge in the possession of others, the petitioner must present their affidavits with admissible statements or other corroborative evidence. *Id.* And only by showing that the petitioner has admissible evidence supporting the facts stated in the petition may the petitioner obtain a reference hearing to resolve factual disputes. *Id.*; *see also In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013).

Though Caldellis has shown a dispute of fact as to a sleeping judge and jurors, he fails to show a dispute of material fact that, if proved, would entitle him

20

to relief. He has not demonstrated how the judge's alleged sleeping caused specific error or what specific testimony was missed. Without specific details of error, Caldellis's evidence is conclusory and insufficient for an evidentiary hearing. *Rice*, 118 Wn.2d at 886; *Yates*, 177 Wn.2d at 18.

CONCLUSION

Caldellis's PRP raised numerous issues, both procedural and substantive. His claims regarding defective jury instruction and improper prosecutor comments presented arguable bases for relief, and the petition was not procedurally barred. Thus, it was error to dismiss Caldellis's petition as frivolous under RAP 16.11(b). But since Caldellis's claims are meritless, there is no relief we can give. Additionally, Caldellis fails to present sufficient facts to warrant a reference hearing on whether the judge or jurors slept during his trial. We dismiss Caldellis's PRP.

_Gonzáles, J._

WE CONCUR:

_Madsen, C.J._

_Stephens, J._

_Johnson, J._

_Wiggins, J._

_Owens, J._

_Gordon McCloud, J._

_Fairhurst, J._

_Yu, J._