# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74418-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| THAVY KONG, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| JASON SAROU NHORN, | ) | |
| ANTHONY C. VONGXAY, AND | ) | |
| LAKHINA S. VOUEK, | ) | |
| | ) | |
| Defendants. | ) | FILED: April 24, 2017 |

MANN, J. — A jury convicted Thavy Kong of residential burglary and found that he was armed with a firearm when committing the offense. After a bench trial, the trial court then found Kong guilty of first degree unlawful possession of a firearm. Kong appeals and argues that (1) his attorney provided ineffective assistance of counsel, (2) the trial court erred in denying his motion for a mistrial, and (3) cumulative error denied him a fair trial. We affirm the convictions.

I

In April 2015, a Special Emphasis Team (team) from the Bellevue Police Department was conducting surveillance on Anthony Vongxay and Lakhina Vouek because it suspected them of burglary. The team knew both were associated with a particular white Acura. The Acura was registered to Vouek's brother-in-law and was on loan to Vouek. Officers also knew that Vouek was dating Kong and had seen Kong, Vouek, and Vongxay in the Acura in late March. As part of the investigation, the team obtained a warrant for a "pen trap" or "pen register" device on Vongxay's cellphone, which provided GPS location data for the phone.

On April 2, the team located the Acura in a Renton parking lot. Detective Grannis observed Vongxay and another associate, Jason Nhorn, leave a store and get into the Acura. Grannis notified the other members of the team. As the Acura left the parking lot, the team covertly followed. The team followed the car to Ron Regis Park along the Maple Valley Highway. One of the officers saw the Acura pull in close to the only other car parked in the lot. Vongxay and Nhorn got out of the Acura, looked into the parked car's windows, got back in the Acura, and drove away. Vongxay was driving at the time. One of the team members observed that there were three or four people in the Acura.

The team followed the Acura from the park into the Renton Highlands, a residential area defined by dead-end streets and cul-de-sacs. The Acura drove slowly through the area, pausing every few minutes, before starting down the next street. Just before noon, a team member watched as the Acura pulled into the driveway of a house on a cul-de-sac. A few minutes later, the Acura drove off again. After the car left, a

-2-

team member stopped by the house to ask what had happened. He learned that an Asian man (Nhorn) had knocked on her door, asked for "David," and left after the occupant told him that there was no one named David there.

Meanwhile, other team members followed the Acura to a house on Vashon Avenue, another cul-de-sac. A team member watched as Nhorn walked to the house's front door and then returned to the car. After Nhorn got back in the car, it turned around to face the street's entrance. Vongxay and Nhorn then got out of the car and walked to the back of the house. Fifteen minutes later, they walked from the house to the car carrying a green bag. Just as they reached the car, it jerked forward, which indicated that another person was driving. Once Vongxay and Nhorn got in, the Acura sped off.

At this point, the team split up. One officer checked the Vashon Avenue house for signs of a break-in and the other team members tried to tail the Acura. Meanwhile, the team member checking the house on Vashon Avenue found the front door unlocked and the house ransacked.

Thirty minutes later, the team tracked Vongxay's cellphone and the Acura to a car wash in Federal Way. When they arrived, the officers saw Kong washing the car in a bay. After blocking the bay, the team arrested Vongxay, Vouek, Nhorn, and Kong.

In custody, and after the police read him his Miranda[1] rights, Kong admitted to driving the car from the house on Vashon Avenue to the Federal Way car wash. He also said that he knew Vouek, Vongxay, and Nhorn, but he denied knowing anything about a burglary. In the car that Kong drove, the police found several items taken from the Vashon Avenue house. Among the items found in the car were electronics, financial

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

documents, credit cards, and burglary tools. The police also found two loaded semiautomatic pistols with extra magazines. One was in the glovebox, and the other was lodged behind a rear speaker panel. Kong's fingerprints were found on the gun in the glovebox. A backpack containing documents addressed to Kong, along with identification and documents belonging to other people, was in the trunk. Police also found a small bag that they believed contained methamphetamine in the driver's compartment.

The State charged Kong, Nhorn, Vongxay, and Vouek with various crimes related to the investigation. The State charged Kong with unlawful possession of a firearm and residential burglary while armed with a firearm. Kong elected to waive his right to a jury trial with respect to the unlawful possession of a firearm charge and to stipulate that he had been previously convicted of a serious offense—an element of the firearm charge.

A jury convicted Kong of the residential burglary and found that he was armed with a firearm when committing that offense. The trial court found Kong guilty of the firearm offense. Although the court orally ruled on Kong's guilt from the bench, it entered its findings and conclusions after Kong filed this appeal.

II

Kong asserts first that he was deprived of his right to effective assistance of counsel because his counsel failed to object and move to strike certain testimony. We disagree.

-4-

A. Standard of Review

We review claims of ineffective assistance of counsel de novo. State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010).

The Sixth Amendment of the United States Constitution guarantees the right to effective assistance of counsel to a criminal defendant. Strickland v. Washington, 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish a claim for ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland, 466 U.S. 687-88; In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 140, 385 P.3d 135 (2016). Where the defendant claims ineffective assistance based on counsel's failure to object to inadmissible evidence, the defendant must also show that an objection to the evidence would have been sustained. State v. Hendrickson, 129 Wn.2d 61, 80, 917 P.2d 563 (1996).

A counsel's performance is not deficient when counsel's conduct can be characterized as legitimate trial strategy or tactics. Caldellis, 187 Wn.2d at 141. A defendant must overcome a "strong presumption that counsel's performance was reasonable" to prevail. Caldellis, 187 Wn.2d at 140.

B. Failure to Object

Kong argues his counsel's performance was deficient for twice failing to object and move to strike evidence tendered by the State that had been excluded in pretrial rulings.

1. Prior Investigations

Kong moved for a pretrial ruling excluding evidence of previous investigations of him. The State committed to advise its witnesses "not to mention any prior investigation of the defendant" and avoid any reference to police officers seeing Kong at the Department of Corrections (DOC). At trial, when asked if he had ever seen Kong associated with the Acura before the date of the burglary, Officer Keene testified that he had surveilled Kong during Kong's visit to the DOC:

> [KEENE]: I can't tell—I don't remember the exact day, but it was maybe a week or two prior to that, to the 2nd. Detective Christiansen asked me and Officer Smith to go down to the Department of Corrections office in Seattle because he had heard that [Kong] had an appointment there. And so we went there to see what car he would show up in or just to do some surveillance on him.

Kong's attorney did not object and did not cross-examine Keene. Instead, he requested a sidebar. After the trial court proposed delaying the sidebar until after the next witness, Kong's attorney spoke off the record with the prosecutor.

At the next break, defense counsel pointed out that Keene had referred to the DOC despite the pretrial rulings. Counsel stated, "In an abundance of caution, I'm moving for a dismissal of that [burglary] charge, just to make a record." He further asserted that the focus of his trial strategy had been to keep out every reference to Kong's prior criminal history, and that was the purpose of waiving the jury with respect to the firearm charge.

The trial court inquired into the prejudice of the testimony:

> It's pretty clear from the testimony that, at the very least, Mr. Kong has some friends who seem to get in trouble. . . . And I think that's part of your strategy is that they're eyeballing these guys because they have

reason to believe they're involved in crimes and your client, which just happened to be in the wrong place at the wrong time, so to speak, right?

Defense counsel agreed. The court went on:

So the notion that your client might have, I think he said an appointment or something with DOC, nobody really knows what the appointment was for. That's one thing he didn't tell the jury. So, conceivably, it would be related to some of the folks that he unfortunately found himself involved with.

So it doesn't loom as large a concern as it might otherwise if—if he was the sole defendant and there wasn't some other folk around him that could conceivably have issues with DOC. Does that make sense to you?

Defense counsel agreed, "that does lessen the prejudice." The State offered that a limiting instruction was the appropriate remedy, but defense counsel refused an instruction because it would emphasize the problematic testimony.

Kong's claim for ineffective assistance of counsel due to the failure to object or move to strike Keene's testimony fails. At the sidebar, Kong's counsel agreed with the court that the evidence was not as prejudicial as it may have been if Kong had been the sole person involved in the crime. And when the court suggested that giving a curative instruction may "ring the bell louder," Kong's counsel agreed. It thus appears that Kong's counsel made a legitimate strategic decision not to highlight the testimony by objecting and moving to strike: as such, his conduct cannot serve as a basis for an ineffective assistance of counsel claim. Caldellis, 187 Wn.2d at 141.

In his statement of additional grounds (SAG), Kong argues that testimony relating to the team's tactics prejudiced him because it supported the inference that he was a repeat criminal offender. The team works proactively to identify repeat criminal offenders, conduct surveillance on them, and if they commit a crime, apprehend them. Because the team was watching Kong on the day he was arrested, Kong argues that

the testimony about the team's tactics supports the inference that Kong was a repeat criminal offender. He contends this inference made his lawyer's failure to object to Keene's testimony about surveilling Kong highly prejudicial.

Kong's SAG argument is unpersuasive. Even though evidence that the team surveils repeat criminal offenders prejudiced Kong, the prejudice does not create a reasonable probability that Kong would not have been convicted. Even if Kong's counsel had objected to Keene's prejudicial testimony, Kong would still have been convicted: he admitted to driving the getaway car containing stolen property from the burgled house.

### 2. Possible Methamphetamine

During the pretrial hearing, the State explained that it planned to introduce evidence of some of the things found in the Acura. The State conceded, however, that there were some items that were not going to be introduced into evidence including: "the methamphetamine that was found in the car, we're not even going there. We know that's prejudicial." Despite the concession, at trial when asked what he found in the car, Detective Christiansen said that he found "[a] baggie that contained what [he] believed to be methamphetamine." Kong's attorney did not object to or move to strike this testimony.

It is once again reasonable to assume that Kong's counsel again may have decided that lodging an objection and motion to strike would unnecessarily highlight the fact that drugs were found in the car. But even if Kong's counsel did not have a strategic reason, Kong fails to demonstrate that but for the evidence, the outcome would have been different. There was nothing more than the single passing reference to

finding "suspected methamphetamine" in the driver's compartment. There was no evidence that the substance was ever tested or confirmed to be methamphetamine. There were no drug charges against any of the defendants. Though Kong drove the Acura at times, the car did not belong to him and had been loaned to his girlfriend, Vouek. Kong was not the only person to drive the car on the day of the arrest. The police testified that Vongxay was driving the car when it stopped at the park. Since there was no evidence offered that the substance was methamphetamine, and no evidence that it belonged to Kong, there is no reasonable likelihood that defense counsel's objection would have changed the outcome of the trial. Kong has not overcome the strong presumption of effective assistance of counsel nor demonstrated prejudice.

III

Kong argues next that the trial court erred in denying his motion for a mistrial after Keene testified that he had surveilled Kong at a meeting at the DOC. We disagree.

The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried. State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). We review the trial court's denial of a mistrial for abuse of discretion. Emery, 174 Wn.2d at 765. We find abuse only "when no reasonable judge would have reached the same conclusion." Emery, 174 Wn.2d at 765 (internal quotations omitted). "In determining the effect of an irregularity, we examine (1) its seriousness; (2) whether it involved cumulative evidence;

-9-

and (3) whether the trial court properly instructed the jury to disregard it." Emery, 174 Wn.2d at 765.

The court did not abuse its discretion when it denied Kong's motion for a mistrial. Kong was not so prejudiced by the evidence that nothing short of a new trial would ensure that he was fairly tried. First, Keene's testimony was not a serious irregularity. The testimony about surveilling Kong at the DOC was ambiguous since the jury already knew that the police were already surveilling Kong's associates. Kong's attorney agreed with the court that the testimony was ambiguous and that this ambiguity mitigated the prejudice. In addition, the testimony was fleeting and inconclusive; it was not clear how the visit related to anything he had done.

Second, although the testimony was not cumulative of any other evidence linking Kong to the DOC, the testimony's fleeting nature lessens its prejudice. Third, Kong's counsel agreed with the court that giving "a limiting instruction would do nothing more than highlight something that otherwise may have gone past them without much notice." Kong's counsel ultimately did not ask for an instruction.

Kong argues that the remark was serious because it upended his entire defense strategy. It appears that Kong waived his right to a jury trial on the firearm charge so he could keep his criminal history from the jury.

This argument fails because, as the trial court recognized, Vongxay and Vouek were being investigated for criminal activity. Since there was evidence linking Kong's associates to criminal activity, evidence of police surveilling Vouek and Kong at the DOC does not show that Kong had a prior criminal record. At best, the nature of Kong's link to the DOC is ambiguous. The testimony's ambiguity may have even supported

-10-

Kong's defense theory that he was in the wrong place at the wrong time with the wrong people. Denying a motion for a mistrial was not an abuse of discretion.

Kong also argues that the court abused its discretion because it applied the wrong legal standard when ruling on the motion for a mistrial. But Kong is mistaken. Trial courts grant mistrials "only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." Emery, 174 Wn.2d at 765. The trial court applied the correct standard.

IV

Kong argues next that his judgment and sentence should be vacated because the trial court entered its findings of fact and conclusions of law late. We disagree.

Superior Court Criminal Rule 6.1(d) requires courts sitting as the fact-finder to enter findings of fact and conclusions of law. "The purpose of requiring written findings and conclusions is to ensure efficient and accurate appellate review." State v. Cannon, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996). Findings and conclusions "may be 'submitted and entered even while an appeal is pending' if the defendant is not prejudiced by the belated entry of findings." Cannon, 130 Wn.2d at 329 (quoting State v. McGary, 37 Wn. App. 856, 861, 683 P.2d 1125 (1984)). Although courts may submit findings late, this is disfavored. Cannon, 130 Wn.2d at 329.

Here, the late-filed findings and conclusions did not prejudice Kong. He was able to file an appeal without the findings and conclusions.

V

Kong finally argues that cumulative errors deprived him of his right to a fair trial. He cites his lawyer's failure to object to the DOC testimony, the meth testimony, and the surveillance testimony as errors. We disagree.

The defendant "may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." Emery, 174 Wn.2d at 766. The doctrine applies to cases where "there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

We do not believe cumulative error warrants reversal here. Kong has not shown that he suffered any prejudice from any of the alleged errors.

VI

Kong is indigent and appealed at the public's expense. He asked us to refrain from awarding costs to the State, the party that substantially prevails before us.

When a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2.

Here, the trial court found Kong to be indigent. If the State has evidence that Kong's financial circumstances have substantially improved since that ruling, then it may file a motion for costs with this court's commissioner. See RAP 14.2.

In conclusion, Kong cannot establish a claim for ineffective assistance of counsel. The court did not abuse its discretion by denying Kong's mistrial motion. And the late-filed findings and conclusions did not prejudice Kong. We uphold his judgment and sentence.

WE CONCUR: