# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>GALHEN MELCHIZEDEK, f/k/a JOHN ENTLER,<br><br>Petitioner. | No. 58568-5-II<br><br>UNPUBLISHED OPINION |

CHE, J. — Galhen Melchizedek seeks relief from personal restraint following the Department of Corrections' (DOC) guilty finding and sanctions for violating WAC 137-25-030(557)—refusing to participate in an available work, training, education, or other mandatory programming assignment.

A correctional unit supervisor informed Melchizedek, who is an inmate at a state correctional facility, that he was the next person on a job wait-list for an open groundskeeper position at the facility. Melchizedek did not accept the available work due to his religious beliefs. DOC issued Melchizedek an infraction for violating WAC 137-25-030(557) and Melchizedek pleaded guilty to it. DOC found Melchizedek guilty of the infraction and imposed sanctions.

Melchizedek argues his restraint is unlawful because DOC violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

We hold Melchizedek does not demonstrate his restraint is unlawful. Accordingly, we deny Melchizedek's personal restraint petition (PRP).

FACTS

Melchizedek is incarcerated at a state correctional facility.[1] Melchizedek was formerly named "John Thomas Entler." PRP Attach. 2. In 2014, Melchizedek petitioned to change his name to "Galhen Melchizedek" on direction by "Yahvah (God)." PRP Ex. 3. Melchizedek is an "[Essene] or what are known as [Essenes] or [Messianic Essenes], a group of Jewish descent, who owned and possessed "[*The Dead Sea Scrolls*]." PRP Ex. 3. Melchizedek is the director of "The Essene Assembly of Yahvah," a Washington non-profit corporation. PRP Ex. 3.

As an Essene, Melchizedek adheres to a code of conduct that requires him to separate himself from non-Essenes in regard to work such that he cannot work for a non-Essene government.

In February 2023, a correctional unit supervisor informed Melchizedek that he was the next person on a job wait-list for an open groundskeeper position at the facility.[2] Melchizedek did not accept the available work due to his religious beliefs. DOC issued Melchizedek an infraction under WAC 137-25-030(557)—for refusing to participate in an available work, training, education, or other mandatory programming assignment—and held a disciplinary

---

[1] Melchizedek is not challenging his underlying conviction.

[2] The groundskeeper position entails tending to the lawn and gardens on the correctional institution property.

hearing.[3] Melchizedek pleaded guilty and DOC imposed the following sanctions: 15-day-loss of good conduct time, 30-day-loss of privileges (i.e., no access to dayroom, gym, and yard), 2-month-loss of monthly packages, and 1-month-loss of earned time not earned. Melchizedek appealed DOC's decision and DOC affirmed.

Melchizedek filed a personal restraint petition (PRP) under RAP 16.4(c)(6),[4] seeking relief from unlawful restraint based on DOC's guilty finding and sanctions for violating WAC 137-25-030(557). Melchizedek seeks findings that DOC violated the RLUIPA, or alternatively that DOC's requirements are a substantial burden upon his religious exercise; restoration of his 15-day-loss of good conduct time; restoration of his 1-month-loss of earned time not earned for February 2023; and an injunction preventing DOC from substantially burdening his religious exercise, which prohibits him from working for the government.

ANALYSIS

I. LEGAL PRINCIPLES

A personal restraint petitioner must demonstrate they are entitled to relief under RAP 16.4. *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 567-68, 933 P.2d 1019 (1997). If a petitioner did not have a prior opportunity for judicial review, then the heightened threshold

---

[3] WAC 137-25-030(1) (Category C - Level 1:557) provides that "[r]efusing to participate in an available work, training, education, or other mandatory programming assignment" "may constitute a serious violation."

[4] Though Melchizedek lists RAP 16.4(c)(6) and (7) in the header of his PRP, he does not challenge his restraint under RAP 16.4(c)(7). Melchizedek provides no argument nor citations to legal authority in support of the proposition that other grounds exist to challenge his restraint under RAP 16.4(c)(7). We decline to consider whether other grounds exist. *In re Pers. Restraint of Campbell*, 27 Wn. App. 2d 251, 264, 533 P.3d 144 (2023) ("If a party provides no citation in support of a proposition, we may assume that counsel, after diligently searching, has found none"); *see also* RAP 10.3(a)(6).

requirements applicable to PRPs do not apply, and they need only demonstrate that they are currently under a restraint and the restraint is unlawful.[5] *In re Pers. Restraint of Bufalini*, 4 Wn. App. 2d 392, 399, 423 P.3d 262 (2018); RAP 16.4(a).

A petitioner must show that the restraint is unlawful for one or more of the reasons in RAP 16.4(c). Under RAP 16.4(c)(6), a petitioner shall demonstrate that "[t]he conditions or manner of [their restraint] are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." A petitioner must also provide with particularity the facts that, if proved, would entitle them to relief. *In re Caldellis*, 187 Wn.2d 127, 146, 385 P.3d 135 (2016); RAP 16.7(a)(2)(i).

Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the burden furthers a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a), (a)(1).

We analyze alleged violations of RLUIPA under a multistep test. *See Holt v. Hobbs*, 574 U.S. 352, 360-62, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015). Initially, the claimant has the burden to prove that their religious exercise is "grounded in a sincerely held religious belief" and that the government's actions "substantially burden[] that exercise of religion." *Holt*, 574 U.S. at 361; 42 U.S.C. § 2000cc-1(a)(1)-(2). When the claimant has satisfied their initial burden, the burden then shifts to the government to prove that its substantial burden on the specific claimant is the "least restrictive means" of serving a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1)-(2); *Holt*, 574 U.S. at 362. Under RLUIPA, "religious exercise" is broadly

---

[5] A petitioner is under a "restraint" if they are confined. RAP 16.4(b).

defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

## II. MELCHIZEDEK'S RELIGIOUS EXERCISE IS GROUNDED IN A SINCERELY HELD RELIGIOUS BELIEF AND IT IS SUBSTANTIALLY BURDENED

Melchizedek argues that his religious exercise is grounded in sincerely held religious beliefs and that his religious exercise has been substantially burdened. Specifically, Melchizedek contends that DOC's requirement that he participate in available work, or, alternatively, that DOC's issuance of an infraction and sanctions for his refusal to work, constitutes a substantial burden on his religious exercise. We agree.

First, we must determine whether Melchizedek has satisfied his initial burden to show that his religious exercise is "grounded in a sincerely held religious belief" and that the government's actions "substantially burden[] that exercise of religion." *Holt*, 574 U.S. at 361; 42 U.S.C. § 2000cc-1(a)(1)-(2). In doing so, we must identify the religious exercise allegedly burdened and determine if the challenged prison regulation substantially burdens Melchizedek's religious exercise. *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008).

Melchizedek claims that DOC's requirement that he participate in available work directly conflicts with his adherence to Essene teachings that mandate Essenes to separate themselves from non-Essenes in regard to work. In other words, Melchizedek claims DOC substantially burdened his religious exercise to not work for a non-Essene government. DOC does not appear to contest that Melchizedek's religious exercise is grounded in a sincerely held religious belief. Melchizedek provides several examples demonstrating that his Essene religious exercise is grounded in his sincerely held religious belief, including his petition to have his name changed

5

for religious reasons and his directorship of "The Essene Assembly of Yahvah," among other things. Melchizedek satisfies his first burden to show that his religious exercise is grounded in a sincerely held religious belief.

Next, we consider whether Melchizedek has shown that DOC has substantially burdened his religious exercise. Under *Holt*, a claimant "easily satisfied" their burden where the government's policy forces the claimant to choose between acting in a way that seriously violates their religious beliefs or breaching the policy and risking disciplinary action. 574 U.S. at 361. In that case, the government's grooming policy prevented the petitioner from growing his beard in accordance with his religious beliefs. *Holt*, 574 U.S. at 355-56. Similarly, here, Melchizedek had to either engage with non-Essenes in participating in available work under WAC 137-25-030(557) or violate his religious beliefs and risk disciplinary action. Indeed, Melchizedek chose to do the latter and received an infraction and sanctions for adhering to his belief that working for a non-Essene government is against Essene teachings. Thus, Melchizedek satisfies his second burden to show that DOC's actions substantially burdened his religious exercise.

### III. DOC HAS A COMPELLING GOVERNMENT INTEREST

Because Melchizedek has demonstrated that his religious exercise is grounded in a sincerely held religious belief and that DOC's actions substantially burdened his religious exercise, the burden shifts to DOC to show a compelling government interest that is furthered by WAC 137-25-030(557). DOC argues that the regulation furthers two compelling government interests—prison security and the effective prison administration. We agree.

It is the intent of the Washington State Legislature to establish a comprehensive corrections system, in relevant part, to ensure public safety; positively impact offenders by emphasizing personal responsibility and accountability; discourage recidivism; and treat all offenders with fairness and equity without regarding religion, race, sex, national origin, residence, or social condition. RCW 72.09.010(1)-(4). To the extent possible, the corrections system should reflect community values including: avoiding idleness, which is detrimental to offenders and the community; adopting a work ethic beneficial to offenders and the community; providing opportunities for self-improvement through the growth and expansion of offenders' skills and abilities, so they can fulfill their role in the community; connecting the receipt or denial of privileges to accomplishments and responsible behavior; sharing the personal and fiscal obligation of the corrections community; and providing for prudent management of the limited human and fiscal resources of the community. RCW 72.09.010(5)-(6).

Further, it is the legislature's intent that all incarcerated individuals be required to participate in department-approved work programs, education programs, or both, unless exempted by statute. RCW 72.09.460(2). Eligible incarcerated individuals who refuse available work or education programs shall lose privileges under RCW 72.09.130. RCW 72.09.460(2). To implement the legislature's intent, DOC shall, by rule, adopt "a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges," and that includes "increases or decreases in the degree of liberty granted [to an] inmate" within the work and education programs as well as "access to or withholding of privileges available within correctional institutions." RCW 72.09.130(1).

7

WAC 137-25-030(557) provides that "[r]efusing to participate in an available work, training, education, or other mandatory programming assignment" "may constitute a serious violation."

Courts have recognized prison administration to be a compelling government interest. *McNabb v. Dep't of Corr.*, 163 Wn.2d 393, 406, 180 P.3d 1257 (2008). Furthermore, prison administration is the "unique province of the State and should be afforded due deference by the courts." *McNabb*, 163 Wn.2d at 406.

Courts have recognized prison security to be a compelling government interest for purposes of RLUIPA. *Warsoldier v. Woodford*, 418 F.3d 989, 998 (9th Cir. 2005).

Here, DOC submits that prison security and the effective administration of DOC's prisons are compelling state interests.[6] Participation in available work programs serves the prison's need to oversee the inmates for security purposes, rehabilitate inmates, defray the cost of confinement, help inmates learn transferable skills, meet penological objectives, and reduce recidivism.

Thus, DOC has met its burden to show its compelling interest in requiring Melchizedek to participate in available work.

---

[6] Melchizedek appears to argue that because he has not worked for the DOC for nearly 17 years, DOC can show neither that his current failure to work has had an impact on any compelling government interest DOC can assert nor that an exemption for Melchizedek from working would pose a threat to DOC's purported interest. Melchizedek has not pointed to any case where a court has found this fact to be determinative. Additionally, the fact that some individuals have to wait, sometimes for years, for a position to become available does not reduce the compelling nature of the State's interest in having all inmates serve in work positions as they become available.

## IV. DOC IS USING THE LEAST RESTRICTIVE MEANS TO FURTHER ITS COMPELLING GOVERNMENT INTEREST

DOC argues that holding Melchizedek to the requirement that he participate in available work is the least restrictive means in furtherance of its compelling interests of maintaining prison security and orderly administration of prisons. DOC further argues that granting Melchizedek an exemption from participating in available work would threaten the orderly administration of the prison system. We agree with DOC.

To prove that it is using the least restrictive means to further its compelling interest, the government must show that it does not have other means of achieving its goal, absent imposing a substantial burden on the claimant's exercise of religion. *Holt*, 574 U.S. at 364-65.

States must conform to the neutrality requirements of the Free Exercise and the Establishment clauses of the United States Constitution, "favoring neither one religion over others nor religious adherents collectively over nonadherents." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 696, 114 S. Ct. 2481, 129 L. Ed. 2d 546 (1994). Thus, a defendant's least restrictive means to accommodate a plaintiff's religious beliefs, must conform to the neutrality requirements of the federal constitution, while furthering its compelling interest. *See Grumet*, 512 U.S. at 696. RLUIPA does not confer special treatment on any particular religion nor "single[ ] out [any] bona fide faith for disadvantageous treatment." *Cutter v. Wilkinson*, 544 U.S. 709, 723-24, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005).

Requests for religious accommodations are not permitted under federal law if they "jeopardize an institution's effective functioning." *Cutter*, 544 U.S. at 711. Relatedly, RLUIPA

does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722.

Melchizedek seeks a religious exemption from having to accept available work at the correctional institution, as opposed to an accommodation to meet a specific religious practice. But, in applying the neutrality principle required by the federal constitution, if DOC were to exempt Melchizedek from mandatory programming requirements and disciplinary regulations for refusal to work, DOC would be favoring religious adherents individually or collectively over nonadherents in violation of *Cutter*. 544 U.S. at 723-24.

Furthermore, RLUIPA acknowledges an institution's need to maintain order and safety and does not favor accommodation of religious observances over meeting this need. *Cutter*, 544 U.S. at 722. A decision to exempt Melchizedek from accepting available work could jeopardize the effective functioning of the prison and its operations dependent on inmate labor because "the refusal to work presents a threat to the orderly administration of the prison system." *See Mendoza v. Lynaugh*, 989 F.2d 191, 194 n.4 (5th Cir. 1993). It could further defeat the legislature's intent and purpose in creating the inmate work program and, moreover, threaten the order and safety of the prison by promoting idleness among inmates. Under *Cutter*, such a result is not allowable under RLUIPA. *See* 544 U.S. at 722.

Thus, the least restrictive means of furthering DOC's compelling interests of maintaining prison security and orderly prison administration are to require Melchizedek to participate in available work and sanction him as statutorily authorized if he refuses to do so.

No. 58568-5-II

We hold DOC has shown that it is implementing the least restrictive means to serve its compelling interest of maintaining the safety and security of inmates and staff in its prisons, and the orderly administration of prisons.

CONCLUSION

We hold Melchizedek does not demonstrate his restraint is unlawful. Accordingly, we deny Melchizedek's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, J.

Veljacic, A.C.J.