# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48341-6-II |
| | (consolidated) |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| WILLIAM LUMPKINS, | |
| Appellant. | |
| In re the Matter of the Personal Restraint of | No.  49778-6-II |
| WILLIAM LUMPKINS, | |
| Petitioner. | |
| In re the Matter of the Personal Restraint of | No.  49937-1-II |
| WILLIAM LUMPKINS, | |
| Petitioner. | |

SUTTON, J. — William Lumpkins appeals his convictions for first degree rape and second degree assault with sexual motivation.  He argues that the trial court violated his due process right to present a defense when it denied his request for a continuance to present a DNA witness, his trial counsel was ineffective when he failed to subpoena the DNA witness to rebut the State's case, and his second degree assault conviction should have merged with his conviction for first degree rape.

Lumpkins alleges multiple additional errors in his personal restraint petitions (PRPs).[1] He argues that (1) the State improperly charged him with a felony initially in district court and improperly held him without bail, (2) his CrR 3.3 time for trial right was violated, (3) the State did not serve him with its response to his CrR 8.3 motion to dismiss, (4) the prosecutor committed several acts of misconduct, (5) the trial court erred by admitting his identification card, (6) the trial court erred by not allowing him to publish his booking photograph after previously admitting it, (7) the trial court erred by denying his motion for a continuance, (8) the trial court erred by not admitting evidence of the victim's prostitution, (9) the trial court erred by allowing the State to play a police video during closing argument, (10) the trial court acted with racial bias, which violated his due process rights, (11) the police officers' failure to preserve syringe evidence at the crime scene requires reversal, and (12) newly discovered evidence requires reversal or a new trial.

We hold that the trial court did not violate Lumpkins' right to present a defense by denying his motion to continue and his counsel's performance was not ineffective. However, we accept the State's concession that the second degree assault with sexual motivation conviction merges with the conviction for first degree rape. We also find no merit in any of the PRP claims, and we deny the petitions. Thus, we affirm Lumpkins' first degree rape conviction, but we remand to the sentencing court to vacate his second degree assault with sexual motivation conviction and for resentencing.

---

[1] Lumpkins' trial counsel filed a CrR 7.5 motion to vacate the judgment which was transferred to our court as a PRP. Lumpkins separately filed a pro se PRP.

## FACTS

### I. EVENTS OF FEBRUARY 20, 2015

In the early morning of February 20, 2015, S.S.[2] was doing laundry away from her home. Around two or three in the morning, S.S. began walking home and ingested some heroin. As she was walking, a middle-aged black man approached her and invited her to smoke marijuana with him. She agreed and the two began to smoke together. The man told her he was from Illinois.

The two walked around, smoked marijuana, and ended up outside of an apartment near a utility shed. The man invited her into the shed, but she refused and continued to smoke outside. The man repeatedly requested that S.S. perform sexual acts with him, but she refused. The man then grabbed S.S. and punched her in the face, causing her to lose consciousness.

When S.S. regained consciousness, she realized that she was in the utility shed, and her pants and underwear were pulled down. She felt as though she just had sex with a man. As she walked out of the shed, police officers arrived. She had a bloody lip and soiled clothing. S.S. told the officer that an unknown black male had raped her. She also mentioned to the officers that her attacker had said he was from Illinois.

She was taken to the hospital where health care workers took swab samples from her body. Also, S.S.'s injuries were documented to include marks on her neck, bleeding on the side of her eye, dried blood on her lips, a cut on her tongue, and lacerations in her genitalia.

---

[2] The trial court entered a sexual assault protection order to protect the victim's identity, and thus, we use the victim's initials.

## II. INVESTIGATION AND CHARGE

While at the hospital, Officer David Tarrence and Detective Jeff Weiss interviewed S.S. and showed her a photo montage. S.S. was immediately able to identify Lumpkins in the montage. She stated that she was "[o]ne-hundred and ten percent" confident that Lumpkins was the man who attacked her. Verbatim Report of Proceedings (VRP) (Oct. 15, 2015) at 131. The officers had his Illinois identification card from a prior investigation.

Lumpkins was arrested on February 20, 2015. A determination of probable cause was signed on February 21 and Lumpkins was booked into jail on February 23. On February, 24, the State filed a preliminary criminal complaint in district court alleging Lumpkins had committed first degree rape against S.S. and the district court conducted a preliminary hearing. The district court read Lumpkins the charge filed against him, appointed Lumpkins counsel, set bail at $100,000, and imposed conditions of release.

On March 24, the State dismissed the district court case and, on the same day, filed a felony information charging Lumpkins with the first degree rape and second degree assault with sexual motivation. On March 30, Lumpkins was arraigned in superior court. The superior court initially set the trial on May 27. The trial was continued several times.

While in jail, staff collected swab samples from Lumpkins including from the "inside surface of the fly area" of his underwear. VRP (Oct. 16, 2015) at 288. Lumpkins' clothing was placed into evidence. Lumpkins' clothing and swab samples, as well as swab samples taken from S.S., were tested for deoxyribonucleic acid (DNA). Samples taken from S.S. showed the presence of semen, but no specific male profile was identified. The sample taken from Lumpkins' underwear was consistent with the known profiles of S.S. and Lumpkins.

### III. PreTrial Motions

Prior to trial, the prosecutor requested a continuance for additional testing, called Y-STR DNA testing, on the swab taken from S.S.'s genitalia. Y-STR DNA testing is more sensitive and would potentially have the ability to identify whose semen was in S.S's genitalia. Lumpkins agreed to the continuance. The Y-STR testing showed that the swab contained three different men's semen, but no match could be made to any specific individual. A week before trial, the State gave notice that it might call a lab analyst to testify from the Washington State Patrol (WSP) lab to explain the results of the Y-STR testing.

### IV. Trial

At trial on October 17, S.S. made an in-court identification of Lumpkins and testified that she was confident Lumpkins was the man who attacked her, and that he told her that he was from Illinois. Further, the jury heard evidence that S.S. promptly identified Lumpkins in the photo montage. The officers had Lumpkins' Illinois identification card from a prior unrelated investigation. The State moved to admit Lumpkins' Illinois identification card and the trial court admitted it without objection by Lumpkins. Lumpkins testified that he had never met S.S.

After learning that the State would not be calling the Y-STR witness, defense counsel stated that he was debating whether to call the Y-STR witness. However, defense counsel later told the trial court that he had just been informed that the Y-STR witness would not be available until the following week. The trial court stated that it would not delay the trial until the following week and told defense counsel to either call a witness or rest. Defense counsel then made a motion to continue the trial. Defense counsel explained that he had emailed a subpoena to the Y-STR witness

the previous night. The trial court denied the motion to continue, ruling that emailing a subpoena is not a proper method of service. The defense then rested.

The jury found Lumpkins guilty of first degree rape and second degree assault with sexual motivation. At sentencing, defense counsel argued that the rape and assault convictions should merge. The trial court disagreed and imposed concurrent indeterminate sentences of 184 months to life on the rape conviction and 53 months to life on the assault conviction (including a 24-month statutory enhancement for sexual motivation).

Lumpkins' trial counsel filed a post-trial CrR 7.5 motion to vacate the judgment which was transferred to this court as a PRP. Lumpkins also filed a Pro Se PRP. Lumpkins timely filed a direct appeal, his direct appeal and the two PRPs were consolidated by order of this court.

ANALYSIS

I. RIGHT TO PRESENT A DEFENSE

Lumpkins argues that the trial court violated his due process right to present a defense when it denied his motion for a continuance to present a Y-STR witness to rebut the State's case. We disagree.

The United States Constitution and the Washington State Constitution guarantee a defendant's right to present a defense. U.S. CONST. amend. VI, XIV; WASH. CONST. art. I, § 22. We review an alleged denial of the constitutional right to present a defense de novo. *State v. Lizarraga*, 191 Wn. App. 530, 551, 364 P.3d 810 (2015). Criminal defendants have a fundamental, constitutional right to present evidence in his or her defense. *Lizarraga*, 191 Wn. App. at 551-52. However, the defendant's right to present a defense is not absolute. *Lizarraga*, 191 Wn. App. at 553. "'The accused does not have an unfettered right to offer [evidence] that is incompetent,

privileged, or otherwise inadmissible under standard rules of evidence.'" *Lizarraga*, 191 Wn. App. at 553 (alteration in original) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)).

Our Supreme Court has recognized that the "'failure to grant a continuance may deprive a defendant of a fair trial and due process of law, within the circumstances of a particular case.'" *Downing,* 151 Wn.2d 265, 274, 87 P.3d 1169 (2004) (quoting *State v. Williams*, 84 Wn.2d 853, 855, 529 P.2d 1088 (1975)). A motion for a continuance will only be overturned if the trial court abused its discretion. *Downing,* 151 Wn.2d at 272. When a denial of a motion to continue allegedly violates constitutional due process rights, a defendant must show that he was prejudiced. *See Downing*, 151 Wn.2d at 274-75.

Here, the Y-STR witness would have testified that there were three different men's semen found inside of S.S's genitalia, but that there was no match that could be made to any specific individual. This evidence from the Y-STR witness would not have rebutted the DNA link between Lumpkins and the victim because the State presented uncontroverted DNA evidence that S.S.'s and Lumpkins' DNA was present in Lumpkins' underwear. The uncontroverted DNA evidence was particularly damaging because Lumpkins testified at trial that he had never met S.S. Further, the jury heard evidence that S.S. promptly identified Lumpkins in the photo montage.

Therefore, Lumpkins has failed to show that the trial court's denial of the motion to continue prejudiced him or that the denial affected the outcome of the trial. Thus, Lumpkins' claim fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. LEGAL PRINCIPLES

Lumpkins argues that he received ineffective assistance of counsel because he was prejudiced by his counsel's failure to properly subpoena the Y-STR witness. We disagree.

A claim of ineffective assistance of counsel presents a mixed question of law and fact that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009); *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, Lumpkins must show that his trial counsel's representation was deficient and his trial counsel's deficient representation prejudiced him. *Strickland,* 466 U.S. at 687.

The first prong is met by the defendant showing that the performance falls "'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland*, 466 U.S. at 668). A defendant alleging ineffective assistance must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "'When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient.'" *Grier*, 171 Wn.2d at 33 (quoting *Kyllo*, 166 Wn.2d at 863). The second prong is met if the defendant shows that there is a substantial likelihood that the misconduct affected the verdict. *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). A defendant's failure to meet their burden on either prong will be fatal to a claim of ineffective assistance. *Kyllo*, 166 Wn.2d at 862.

8

B. PREJUDICE

Lumpkins argues that his counsel's performance prejudiced him because "the defense's only hope was to cast doubt on the DNA link. A separate DNA test that did not conclusively link Lumpkins and S.S. was the only way to do so." Br. of Appellant at 18-19. As discussed above, the potential evidence from the Y-STR witness would not have cast doubt on the DNA link between Lumpkins and S.S. Based on the evidence presented at trial, there is no substantial likelihood that the absence of testimony from the Y-STR witness about the Y-STR results would have affected the verdict. Thus, Lumpkins fails to make a sufficient showing on the prejudice prong. Therefore, we hold that his ineffective assistance of counsel claim fails.

### III. MERGER OF THE ASSAULT AND RAPE CONVICTIONS

Lumpkins argues that his conviction for second degree assault with sexual motivation should merge with his conviction for first degree rape based on *State v. Williams*.[3] The State concedes that the two convictions should have merged. Br. of Resp. at 15-16. We agree.

The merger doctrine applies when the degree of one offense is raised by conduct that is defined as a crime elsewhere. *State v. Kier*, 164 Wn.2d 798, 801-02, 194 P.3d 212 (2008). Merger requires that we presume that the legislature intended to punish both crimes with a single, greater sentence for the greater offense. *Kier*, 164 Wn.2d at 803-04.

Here, Lumpkins assaulted and caused S.S. to become unconscious before and during the rape. Because the assault was used to effectuate the rape and the assault raised the degree of rape to first degree under RCW 9A.44.040(1)(c), the second degree assault conviction merges with the

---

[3] 156 Wn. App. 482, 495, 234 P.3d 1174 (2010).

first degree rape conviction. Thus, we remand to the sentencing court to vacate the second degree assault with sexual motivation conviction and for resentencing.

## IV. PRP ANALYSIS

### A. LEGAL PRINCIPLES

To be entitled to relief in a PRP, the petitioner must establish, by a preponderance of the evidence, either a constitutional violation that resulted in actual and substantial prejudice or a nonconstitutional error that resulted in a complete miscarriage of justice. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 676, 327 P.3d 660 (2014). The petitioner must support his claims of error with a statement of facts on which his claim of unlawful restraint is based and must state the evidence available to support his factual allegations. RAP 16.7(a)(2)(i); *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 686, 363 P.3d 577 (2015).

The petitioner may support his allegations with the trial court record, affidavits, or other forms of corroboration. *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 146, 385 P.3d 135 (2016). Corroborating sources must show that admissible evidence will establish the petitioner's factual allegations. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Bald assertions and conclusory allegations are insufficient to support a petition. *In re Caldellis*, 187 Wn.2d at 146. It is insufficient for a petitioner to rely on mere speculation, conjecture, or inadmissible hearsay. *In re Rice,* 118 Wn.2d at 886.

### B. INITIAL COMPLAINT FILED IN DISTRICT COURT AND BAIL

Lumpkins argues that the State improperly charged him with a felony in district court under CrRLJ 3.2.1 and that he was held without bail. PRP at 3. We disagree.

Under our state constitution, a superior court has exclusive jurisdiction over felonies, including felony trials. WASH. CONST. art IV, § 6. However, RCW 3.66.060 governs the district court's criminal jurisdiction and grants district and superior courts concurrent jurisdiction. *State v. Stock,* 44 Wn. App. 467, 474, 722 P.2d 1330 (1986). A district court has concurrent jurisdiction over preliminary matters involving felonies, including issuing search warrants and arrest warrants, the filing of preliminary felony charges, conducting a preliminary hearing, to include setting bail and conditions of release. CrRLJ 3.2.1; *See State v. Bliss,* 191 Wn. App. 903, 913, 365 P.3d 764 (2015).

Under CrRLJ 3.2.1(f)(1), the State has 72 hours from the defendant's detention to file a complaint, information, or indictment, and Saturdays, Sundays, and holidays are excluded from this time period. Further, the district court may conduct a preliminary hearing to determine whether the defendant should be bound over to the superior court. CrRLJ 3.2.1(g). CrRLJ 3.2.1(g) allows the State to file a felony charge initially in district court so long as the time period from filing the initial complaint in district court and subsequently filing the complaint in superior court does not exceed 30 days.

Here, Lumpkins was initially arrested on Friday, February 20, 2015. The court signed a determination of probable cause on February 21 and Lumpkins was booked into jail on February 23. On February 24, under CrRLJ 3.2.1, the State filed a preliminary criminal complaint against Lumpkins in district court alleging first degree rape of S.S. On February 24, a preliminary hearing was conducted before a district court judge. Because the district court has concurrent jurisdiction over preliminary matters involving felonies under CrRLJ 3.2.1, the State was authorized to initially file the felony charges against Lumpkins in district court. Here, the district court properly

conducted the preliminary hearing under CrRLJ 3.2.1, which included reading the charges against Lumpkins, appointing counsel, setting bail at $100,000, and imposing conditions of release. Thus, the record does not support Lumpkins' arguments that he was improperly charged initially in district court or that he was held without bail following his arraignment.

## C. CRR 3.3 TIME FOR TRIAL RIGHT[4]

Lumpkins argues that his time for trial right was violated under CrR 3.3 because he was not brought to trial in superior court within 60 days of his arrest. We disagree.

CrR 3.3 governs the time for trial for a felony charge in superior court. CrR 3.3 requires that a defendant must be brought to trial within either 60 days (if the defendant is in custody) or 90 days (if the defendant is not in custody) from the date of arraignment, and from the date of any continuances. CrR 3.3(b)(1), (2). Under CrRLJ 3.2.1(g)(2), the State had up to 30 days to file felony charges in superior court after Lumpkins' initial appearance in district court on February 24.

On March 24, 2015, the State dismissed the district court case and filed a felony information against Lumpkins in superior court. March 24 is within the 30 day time period under CrRLJ 3.2.1(g)(2). On March 30, Lumpkins was then timely arraigned in superior court. The superior court initially set trial on May 27 which date was within 60 days of Lumpkins' superior court arraignment on March 30. Subsequent continuances were granted without objection and the superior court granted all continuances within the proper time period. Because the superior court

---

[4] Although Lumpkins characterizes this claim as a "speedy trial" violation, his claim alleges a time for trial violation, which is a non-constitutional error.

12

initially set trial for May 27 which date was within 60 days of Lumpkins' arraignment on March 30, Lumpkins' time for trial claim fails.

D.  LUMPKINS' MOTION TO DISMISS—SERVICE OF THE STATE'S RESPONSE

Lumpkins next claims that the State failed to serve him with a copy of its response to his CrR 8.3 motion.  We disagree.

Even if we assume, without deciding, that the State failed to serve Lumpkins with its response to Lumpkins' CrR 8.3 motion, Lumpkins must offer authority to support his allegations and must show that the State's alleged action prejudiced his right to a fair trial.  *See State v. Brooks*, 149 Wn. App. 373, 384, 203 P.3d 397 (2009).  Here, Lumpkins fails to cite to any evidence, authority, or argument to support his claim.  His conclusory allegations and bald assertions are insufficient.  *In re Caldellis*, 187 Wn.2d at 146.  Thus, we hold that this claim fails.

E.  PROSECUTORIAL MISCONDUCT

Lumpkins next claims that the prosecutor committed multiple acts of misconduct during discovery and at trial in violation of CrR 4.7(a)(1)(v) and *Brady*[5] because (1) his identification card was improperly seized in a prior investigation, (2) he was falsely accused of a crime at that time, and (3) the State never disclosed his identification card during discovery in this case.  CrR 7.5 Motion at 3, 5, 7; PRP at 3.  These claims fail.

CrR 4.7(a)(1) states that

[e]xcept as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant . . . :

. . . .

---

[5]*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

(v) any books, papers, documents, photographs, or tangible objects, which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belonged to the defendant.

In *Brady,* the United States Supreme Court articulated the government's disclosure obligations in a criminal prosecution: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

There are no facts in the record on appeal to support any of these claims. Thus, Lumpkins' claims fail.

## F. CLAIMS RELATING TO ADMISSION OF LUMPKINS' IDENTIFICATION CARD

Lumpkins makes the following argument regarding his identification card evidence:

The court excluding evidence that would show that Detective Cox stole an identification card from Mr. Lumpkin[s'] apartment when he was in Mr. Lumpkin[s'] apartment in November of 2014 because said identification card was not on the inventory list of the warrant signed by Judge Edwards in 2015 and the state claimed that the ID card was from some other case, then when defense counsel tried to introduce the November 2014 incident it ruled that that evidence with not relevant [sic] to the 2015 proceedings.

PRP at 4. At trial, the State moved to admit the identification card and the trial court admitted the Illinois identification card without objection by Lumpkins. Thus, Lumpkins' claim fails.

## G. MOTION TO PUBLISH THE BOOKING PHOTOGRAPH

Lumpkins next argues that the trial court erred by not allowing him to publish his booking photograph to the jury after the court admitted the photograph. We disagree.

A trial court's evidentiary rulings are reviewed for an abuse of discretion. *In re Det. of Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). Here, the trial court admitted the booking

photograph without objection, but denied Lumpkins' later request to publish the photograph and have the jury view the photograph at a specific point in the trial. *See* VRP (Oct. 16, 2015) at 272-73. After closing arguments, the trial court provided the jury with the photograph and other admitted exhibits for review during their deliberations. Lumpkins does not explain how the trial court's ruling, denying his request to publish the booking photograph to the jury, was an abuse of discretion. Thus, this claim fails.

## H. MOTION FOR A CONTINUANCE

Lumpkins repeats his argument made in his direct appeal that the trial court erred by denying his motion for a continuance to secure the testimony of the Y-STR witness to rebut the State's case. As explained above, Lumpkins fails to show that the trial court's denial prejudiced him or that the denial affected the outcome of the trial. Therefore, this claim fails.

## I. EXCLUSION OF EVIDENCE OF THE VICTIM'S ALLEGED PROSTITUTION

Lumpkins argues that the trial court erred by granting the State's motion in limine to exclude evidence of S.S.'s alleged prostitution. We disagree.

The rape shield statute generally excludes evidence relating to the past sexual behavior of a complaining witness. RCW 9A.44.020(2). The statute is designed to guard against the prejudicial inference that a victim's chastity and veracity are related. *State v. Sheets,* 128 Wn. App. 149, 155, 115 P.3d 1004 (2005). Further, the rape shield statute requires that before evidence of a victim's past sexual behavior may be admitted, counsel must file a pretrial motion detailing an offer of proof and the relevancy of the evidence. RCW 9A.44.020 (3)(a).

There is no evidence that Lumpkins filed a pretrial motion detailing an offer of proof and the relevancy of S.S.'s alleged prostitution. Thus, this claim fails.

## J. POLICE VIDEO EVIDENCE DURING CLOSING ARGUMENT

Lumpkins argues that the State committed prosecutorial misconduct when it played the police video during closing argument because he argues that the video was not admitted. We disagree.

Detective Weiss identified the video and the court admitted it without objection. During closing argument, the State played a video taken from the Aberdeen Police Department when it collected Lumpkins' clothing. Because the video was properly admitted, the State did not commit misconduct by playing the video during closing argument. Thus, this claim fails.

## K. DUE PROCESS RIGHTS—RACIAL BIAS

Lumpkins claims that his due process right to a fair trial was violated because of the trial court's racial bias. We disagree.

Because Lumpkins alleges a due process violation, he must establish by a preponderance of the evidence that the alleged constitutional error resulted in actual and substantial prejudice. *In re Cross*, 180 Wn.2d at 676. Lumpkins alleges racial bias by the trial court but fails to support his claim with any evidence of specific instances of racial bias by the trial court. Bald assertions and conclusory allegations are insufficient to support a petition. *In re Caldellis*, 187 Wn.2d at 146. Because he relies on bald assertions and conclusory allegations for this claim, this claim fails.

L.  SPOLIATION OF EVIDENCE

Lumpkins claims that the officers' failure to preserve the syringe evidence at the crime scene prejudiced him because the syringe evidence would have exonerated him.  We disagree.

Lumpkins fails to explain how the syringe evidence would have exonerated him.  Bald assertions and conclusory allegations are insufficient to support a petition.  *In re Caldellis*, 187 Wn.2d at 146. Thus, this claim fails.

M.  NEWLY DISCOVERED EVIDENCE

Lastly, Lumpkins relies on four new declarations to claim that newly discovered evidence would have affected the outcome of the trial.  We disagree.

Newly discovered evidence is grounds for relief in a PRP if those facts "in the interest of justice require" that a conviction be reversed or that a new trial be granted.  RAP 16.4(c)(3).  This standard is the same standard applied to motions for a new trial made on the same grounds.  *In re Pers. Restraint of Spencer,* 152 Wn. App. 698, 707, 218 P.3d 924 (2009).  Under this standard, a defendant must show that the evidence: "(1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching."  *In re Pers. Restraint of Fero*, 190 Wn.2d 1, 15, 409 P.3d 214 (2018).

In his declaration attached to Lumpkins' CrR 7.5 Motion, Oris Hayden declared that he saw S.S. on February 20.  Hayden declared that S.S. is a "working girl going out to do a date, to make money."  CrR 7.5 Motion, Ex. A at 2.  He then stated that he did not encounter a black man when he was traveling that night.  When he saw S.S. next, he did not observe any injuries.  Lastly, he stated that "[i]f you're a heroin addict, you've spen[t] your money and energy, to get more.  So

if you're out trying to get a date to get heroin, why would you stop that focus to go smoke weed with somebody you don't know at a place that you're not familiar with." CrR 7.5 Motion, Ex. A at 2.

In her declaration attached to Lumpkins' CrR 7.5 Motion, Jezika Lynn Imhof-Spencer discussed James Ferris, who she described as a heroin addict and drug dealer who frequents prostitutes. She described Ferris as often seeing S.S. and that he exchanges heroin for sex with prostitutes.

In her declaration attached to Lumpkins' CrR 7.5 Motion, Amanda Nicole Stenek stated that she heard S.S. in August of 2015 tell someone that she had been raped and beaten, but S.S. did not mention Ferris. Stenek also described Ferris as a heroin dealer and addict who frequents prostitutes.

In her declaration attached to Lumpkins' CrR 7.5 Motion, Jennifer Gonzales stated that she saw S.S. around two or three in the morning on the night of the incident. She claimed that nothing was unusual about S.S. and that S.S. never mentioned being raped. Gonzales claimed that S.S. stated that she had to testify in the Lumpkins' trial or go to jail for 30 days, and that S.S. was thrown in jail to make sure that she would testify. Lastly, Gonzales stated that S.S. was not raped that night and had no visible injuries.

Lumpkins fails to show how these four declarations constitute newly discovered evidence that could not have been discovered before trial. Thus, because Lumpkins cannot meet the test for newly discovered evidence, this claim fails.

No. 48341-6-II (cons.)

CONCLUSION

We affirm Lumpkins' first degree rape conviction. However, we remand to the sentencing court to vacate his second degree assault with sexual motivation conviction and for resentencing. We also deny Lumpkins' petitions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

WORSWICK, J.