# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51704-3-II |
| Respondent, | Consolidated with |
| v. | |
| JERMAINE LARON ABDUL GORE, | |
| Appellant, | |
| In the Matter of the Personal Restraint of: | No. 51514-8-II |
| JERMAINE LARON ABDUL GORE, | UNPUBLISHED Opinion |
| Petitioner. | |

LEE, A.C.J. — A jury originally convicted Jermaine Laron Abdul Gore of first degree unlawful possession of a firearm, two counts of unlawful possession of a controlled substance with intent to deliver, and first degree rendering criminal assistance. We reversed all convictions except the first degree unlawful possession of a firearm conviction and remanded for resentencing. *State v. Gore*, No. 48960-1-II (Wash. Ct. App. July 11, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/489601.pdf.

Gore now appeals his sentence for first degree unlawful possession of a firearm following this court's remand for resentencing, arguing that there is a scrivener's error on his judgment and sentence. In a supplemental brief, Gore also argues that the sentencing court failed to conduct a

comparability analysis on a prior federal conviction included in his offender score and that he received ineffective assistance of counsel when counsel failed to challenge the inclusion of the prior federal conviction. In a statement of additional grounds (SAG) for review, Gore contends that there is another scrivener's error on his judgment and sentence, his criminal history wrongly states that a prior offense was an adult conviction, the prosecutor engaged in misconduct regarding one of Gore's prior offenses and engaged in misconduct during resentencing, he received ineffective assistance of counsel, there was judicial bias, there was a *Brady*[1] violation, the warrant was defective, and the charging documents were defective. In his consolidated personal restraint petition (PRP), Gore challenges his first degree unlawful possession of a firearm conviction, alleging numerous instances of prosecutorial misconduct at trial and cumulative error.

We affirm Gore's sentence, but remand for correction of the scrivener's errors on his judgment and sentence. We deny Gore's PRP.

FACTS

A.      BACKGROUND FACTS

In 2015, while investigating a drive-by shooting, law enforcement learned that a suspect, Alexander Kitt, would be dropped off at a particular treatment facility in Tacoma. Soon after the drop off, officers stopped a vehicle that had been observed dropping Kitt off at the treatment facility. The officers approached the vehicle, which contained three occupants; Gore was sitting in the driver's seat, Gore's son was sitting behind Gore in the back seat, and a third man was sitting in the back seat on the passenger side.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L Ed. 2d 215 (1963).

A records check revealed that there were no outstanding warrants for Gore, but his son was suspected in a shooting. Officers impounded the vehicle and searched it, finding Gore's cell phone, a bag of crack cocaine, a bag containing crystal methamphetamine, and a loaded .38 caliber revolver.

B.    CHARGES

In 2016, the State charged Gore with first degree unlawful possession of a firearm; unlawful possession of a controlled substance, cocaine, with intent to deliver; unlawful possession of a controlled substance, methamphetamine, with intent to deliver; and first degree rendering criminal assistance. The date of the unlawful possession of a firearm offense was May 5, 2015.

C.    TRIAL

During trial, Gore's wife, Monique Gore, testified for the defense. The prosecutor asked Monique[2] about text messages in her husband's phone regarding drug transactions. Monique responded, "[L]ooking at these messages this is not a good situation, but at the same time that does not paint—that does not give a reasoning to paint a completely bad picture of my husband nor myself." 5 Verbatim Report of Proceedings (VRP) (Apr. 11, 2016) at 544. Monique went on to testify that the firearm located in Gore's vehicle belonged to her, and she purchased it at a yard sale.

D.    CLOSING ARGUMENTS

During closing arguments, the prosecutor argued:

> You know, [Monique] said something that was actually truthful yesterday. When confronted with text messages that reflected the defendant passing along a pill customer to his wife and when confronted with a series of text messages where

---

[2]  We refer to Monique by her first name for clarity and intend no disrespect.

the defendant and his wife were looking to buy Percocet so that the wife could give them to some unknown female, what did [Monique] say? She said, "Well, these are bad. This paints a bad picture, but it's not the whole truth. That's not all of who we are." And that was probably a truthful statement. I am sure that there is good in [Monique] and Mr. Gore. This trial is not about that. This trial is about holding the defendant accountable for the choices he made, and that's what this evidence has shown; that he made some choices dealing drugs, carrying guns, rendering criminal assistance, choices for which he must be held accountable in your verdicts.

6 VRP (Apr. 12, 2016) at 609-10. Gore did not object.

Relating to Monique's testimony, the prosecutor further argued:

Finally, [Monique's] story, and I use story and I mean story. Look, everyone understands what [Monique] was trying to do. She loves her husband. Got it. But it was a whopper, it's nonsense. This idea that I bought a gun at a yard sale, didn't get the receipt, or a receipt, didn't get the purchasing paperwork, didn't get any evidence to corroborate that sale . . . . Wouldn't you expect [Monique], if her story were true, to do everything possible to back up that story, to prove that that story was true . . . ? Because the story is nonsense, because the story is made up, and the fact that the story is made up is, in and of itself, all of the evidence you need in this case.

Let's be clear about something. The defendant has no burden of proof. They don't have to put on any witnesses. But once they do, once they call a witness, that evidence, that testimony is subject to the same exacting scrutiny as the state's evidence, and that evidence can be just as damning as anything the state presented to you. So when you've heard a story that doesn't pass the straight-face test. When you've heard a story that's clearly a lie, you know for a fact that that's now the defendant's gun and his drugs, because the only reason she's lying to you is to protect him.

6 VRP (Apr. 12, 2016) at 627-28. Gore did not object.

Relating to the burden of proof, the prosecutor argued:

Now, I want to talk about the crimes and I want to talk about the evidence in this case, but before we do that, let's talk about the state's burden of proof. It is proof beyond a reasonable doubt. Everyone's heard it. Everyone understands it. We all know through TV and movies and civic conversations that when the government levies a criminal charge against someone, they have to prove it beyond a reasonable doubt. But what does that mean in its application? You may go back and struggle with that concept, because we don't make decisions in our lives by

4

proof beyond a reasonable doubt.  We don't make decisions and say I did that and I'm convinced that that was the right decision beyond a reasonable doubt.

So what does it mean? A few things for you to keep in mind.  One, it's not proof beyond all doubt.  Surely we could say to you, you must be convinced beyond all doubt, but we all know almost anything beyond all doubt.  There are certain things you will always have left lingering, certain unanswered questions.  You may have doubts about this fact or that fact, but the question for you is whether you're convinced beyond a reasonable doubt.  Your doubts become reasonable when they persist, looking at all the evidence, big pictures.  That's when you have a reasonable doubt when that doubt persists, when you think about things in the big picture concept.

6 VRP (Apr. 12, 2016) at 610-11.  Gore did not object.

Relating to Gore's original unlawful possession of cocaine and unlawful possession of methamphetamine charges, the prosecutor questioned Gore's claim that someone else put the controlled substances in Gore's car and argued:

[T]he apple didn't far [sic] too far from the tree.

. . . .

. . . Is it really a coincidence that Mr. Gore's own nephew is also dealing drugs. [sic]  You wonder where the nephew learned it from.  Is it any coincidence that the nephew, Alexander Kitt, and the defendant may very well associate and hang out, and that the defendant may very well have taught him or they may very well have shared secrets or trade practices, and that Alexander Kitt or Jermaine Gore learned from the other that Crown Royal bags, which come with any bottle of Crown Royal liquor, is a great way and an easy way to store your drugs.  So the fact that Mr. Kitt has the same type of bag that the defendant has for keeping his drugs really tell us very, very little.

6 VRP (Apr. 12, 2016) at 689-90.  Defense counsel later requested a mistrial, arguing the "apple" comment in addition to other arguments regarding Gore hindering the drive-by shooting investigation were improper.  The trial court denied the motion for a mistrial.

Also during closing arguments, the prosecutor used a PowerPoint presentation. The prosecutor asked the trial court if it wanted to "review it beforehand." 6 VRP (Apr. 12, 2016) at 607. The trial court declined. The PowerPoint included slides showing pictures of a murder scene, firearms, and drugs. There was also a slide that stated, "Defendant is Guilty" and below these words the prosecutor listed the charges against Gore. PRP Response at App. B. And there was a separate slide referring to the circumstantial evidence against Gore that stated "Monique Gore's 'story.'" PRP Response at App. B. Gore did not object to the PowerPoint presentation.

E.     VERDICT AND APPEAL

The jury found Gore guilty as charged. Gore appealed.

We reversed the convictions for unlawful possession of a controlled substance, cocaine, with intent to deliver; unlawful possession of a controlled substance, methamphetamine, with intent to deliver; and first degree rendering criminal assistance based on ineffective assistance of counsel. We affirmed the first degree unlawful possession of a firearm conviction and remanded for resentencing.

F.     RESENTENCING

During resentencing on the first degree unlawful possession of a firearm conviction, defense counsel requested that a Drug Offender Sentencing Alternative (DOSA) be imposed. The sentencing court denied Gore's DOSA request.

Defense counsel also mentioned that he thought some of Gore's prior criminal convictions had washed out and that Gore's offender score was "seven points." VRP (Mar. 2, 2018) at 12. There was no further discussion regarding washed out crimes.

Gore's criminal history included a 2008 federal conviction for felon in possession of a firearm. There was no request for a comparability analysis on this offense. The sentencing court calculated Gore's offender score as a 9+ based on Gore's extensive criminal history, which included the 2008 federal offense.

Gore's judgment and sentence following resentencing states that he was found guilty by "plea." Clerk's Papers (CP) at 48. It also states that the date of the crime was "05/01/2015." CP at 48. The judgment and sentence sets forth Gore's 14 prior convictions; one of which is a 1994 third degree assault conviction which occurred on "08/20/92." CP at 49. Gore was convicted of this crime on June 15, 1994. Gore's date of birth is February 1975. In the box showing whether the 1994 third degree assault conviction was an adult or juvenile offense it states "A" for adult. CP at 49.

Gore appeals his new sentence for first degree unlawful possession of a firearm. He also filed a PRP challenging his conviction. We consolidated Gore's direct appeal and his PRP.

ANALYSIS

A.    DIRECT APPEAL

1.    Scrivener's Errors

In his direct appeal, Gore contends his judgment and sentence incorrectly states that his condition was the result of a guilty plea. And in his SAG, Gore contends the judgment and

7

sentence wrongly states the date of the current crime.[3] The State concedes these errors. We accept the State's concession.

A scrivener's error is a clerical mistake that, when amended, would correctly convey the trial court's intention, as expressed in the record at trial. *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011), *superseded by statute on other grounds as recognized in In re Postsentence Review of Combs*, 176 Wn. App. 112, 119, 308 P.3d 763 (2013), *review denied*, 182 Wn.2d 1015 (2015). The remedy for a scrivener's error in a judgment and sentence is to remand to the trial court for correction. *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016).

Here, the judgment and sentence states that Gore was found guilty by "plea." CP at 48. He was actually found guilty by a jury. The judgment and sentence also states that the date of the offense was "05/01/2015." CP at 48. Gore's current offense actually took place on May 5, 2015. We remand to the sentencing court to correct Gore's judgment and sentence.

2.    Comparability Analysis

In a supplemental brief, Gore contends that the sentencing court erred by including his 2008 federal conviction in his offender score because the sentencing court failed to conduct the required comparability analysis. He further contends his defense counsel rendered ineffective assistance of counsel during resentencing by not objecting to the lack of a comparability analysis. We agree that the sentencing court erred by not performing a comparability analysis on Gore's

---

[3] Gore also alleges in his PRP reply that the wrong incident number was listed. The purpose of a PRP reply is to reply to the State's response regarding issues raised in the PRP. Gore, however, replies to issues raised in his SAG, which is not permitted under RAP 10.10(f). Therefore, we decline to address this issue further.

2008 federal conviction, but we conclude that the error was harmless. We disagree that Gore received ineffective assistance of counsel

a. Offender score and comparability analysis

We review an offender score calculation de novo. *State v. Schwartz*, 194 Wn.2d 432, 438, 450 P.3d 141 (2019). Although Gore did not object to the lack of a comparability analysis below, illegal or erroneous sentences may be challenged for the first time on appeal, including challenges to an offender score calculation. *State v. Ross*, 152 Wn.2d 220, 229, 95 P.3d 1225 (2004).

To properly calculate a defendant's offender score, the Sentencing Reform Act of 1981, chapter 9.94A RCW, requires that sentencing courts determine a defendant's criminal history based on his or her prior convictions and the level of seriousness of the current offense. *State v. Wiley*, 124 Wn.2d 679, 682-83, 880 P.2d 983 (1994); RCW 9.94A.510. The SRA also requires that prior out-of-state convictions be classified "according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3).

A sentencing court begins its analysis of a defendant's foreign conviction by comparing the elements of the out-of-state offense to the most comparable Washington offense. *State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998). In the event the offenses are not legally comparable, the court must engage in a factual comparability by determining whether the defendant's conduct in the underlying foreign conviction would have violated a Washington statute. *Id.* at 606.

Classification of an out-of-state conviction is a mandatory step in the sentencing process. *Ross*, 152 Wn.2d at 229. Where the sentencing court fails to engage in the required comparability analysis, the reviewing court may remand to the sentencing court for a comparability analysis or

perform the analysis itself where the record contains sufficient information to resolve the issue. *See In re Pers. Restraint of Canha*, 189 Wn.2d 359, 368, 402 P.3d 266 (2017). We conclude that the sentencing court erred by failing to conduct the required comparability analysis. We next examine whether we can resolve the issue.

Gore was convicted in 2008 for felon in possession of a firearm under 18 USC § 922(g)(1). 18 USC § 922(g)(1) provides:

> It shall be unlawful for any person—
>
>> (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
>>
>> . . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Washington's comparable crime at the time of the federal offense was unlawful firearm possession as found in RCW 9.41.040(1)(a),[4] which provides:

> A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter.

We have previously held that the federal and Washington statutes are not legally comparable because 18 USC § 922(g)(1) is broader than RCW 9.41.040(10(a). *State v. Farnsworth*, 133 Wn. App. 1, 19, 130 P.3d 389 (2006), *remanded on other grounds,* 159 Wn.2d

---

[4] The relevant portion of RCW 9.41.040(1)(a) in effect when Gore commit his federal offense is the same as the current version of the statute.

1004 (2007).  This is "because [the federal statute] prohibits firearm *or* ammunition possession by anyone convicted of a felony punishable by one year of imprisonment.  In contrast, the Washington statute prohibited possession of only the weapon, with no mention of ammunition."  *Id*. at 19-20.

Turning to the factual comparability test, our record does not allow us to determine whether Gore's conduct in the underlying foreign conviction would have violated a Washington statute.  Our record only contains the 2008 federal judgment.  Generally, if the record does not contain sufficient information to resolve the issue, we must remand for resentencing for consideration below.  *See Canha*, 189 Wn.2d at 368.  If the sentencing court is unable to determine that Gore's federal conviction is factually comparable to a Washington crime "it may not count the [federal] offense [in Gore's offender score]."  *State v. Thiefault*, 160 Wn.2d 409, 420, 158 P.3d 580 (2007).

b.     Harmless error

The State argues that any error in not conducting the comparability analysis is harmless.  We agree.

RCW 9.94A.525(3) states that "if there is no clearly comparable offense under Washington law . . . the offense shall be scored as a class C felony."  Thus, if there was no clearly comparable offense under Washington law, a class C felony would count as 1 point in calculating Gore's offender score.  RCW 9.94A.525(7).  Here, the sentencing court added 1 point to Gore's offender score without the comparability analysis.  Thus, whether the sentencing court found that the federal offense was comparable to a Washington offense or not, 1 point will be added to Gore's offender score.  Moreover, the sentencing court determined that Gore's offender score was a 9+ based on 14 prior convictions.  (CP at 49)  Therefore, whether the sentencing court found that the federal offense was comparable to a Washington offense or not, Gore's offender score would be 9+.

11

"'Where the standard sentencing range is the same regardless of a recalculation of the offender score, any calculation error is harmless.'" *State v. Priest*, 147 Wn. App. 662, 673, 196 P.3d 763 (2008) (quoting *State v. Fleming*, 140 Wn. App. 132, 138, 170 P.3d 50 (2007), *review denied*, 163 Wn.2d 1047 (2008)), *review denied,* 166 Wn.2d 1007 (2009).

Turning to Gore's ineffective assistance of counsel claim, since we conclude that any error in not conducting a comparability analysis was harmless, Gore cannot establish prejudice to support an ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (a party alleging ineffective assistance of counsel must show that the alleged deficient performance prejudiced the defendant to an extent that changed the result of the trial). Thus, this claim fails.[5]

B.      ADDITIONAL SAG ISSUES

In his SAG, Gore alleges that one of his prior offenses was mischaracterized, the prosecutor engaged in misconduct as to his 1994 third degree assault conviction and during his 2018 resentencing, his counsel provided ineffective assistance, there was judicial bias, there was a *Brady* violation, the warrant was defective, and the charging document was defective. We disagree.

---

[5]    We also acknowledge Gore's passing reference to potentially washed out crimes in his supplemental brief. Since Gore does not assign error to potentially washed out crimes in the assignment of error section of his supplemental brief and he does not elaborate on his argument, we decline to address this issue further. *See* RAP 10.3(a)(4), (6).

1.      Mischaracterization of Prior Offense

Gore first claims that in the criminal history section of his judgment and sentence it wrongly lists an "A" for adult next to a 1994 third degree assault conviction. Our record shows Gore's birthdate (February 1975), the offense date (August 20, 1992) and the sentencing date (June 15, 1994). (CP 48-49) We do not know on what date he was charged with the offense. If Gore has additional information outside our record regarding the charging of the 1994 offense, his proper recourse is the filing of a PRP. *State v. McFarland*, 127 Wn.2d 322, 338 n. 5, 899 P.2d 1251 (1995).

2.      Prosecutorial Misconduct Regrading 1994 Conviction and Resentencing

Gore next simply alleges the prosecutor committed misconduct regarding his 1994 third degree assault conviction and during his 2018 resentencing. Without more, Gore fails to inform us of the nature and occurrence of the alleged errors as required under RAP 10.10(c). Therefore, we decline to address this issue further.

3.      Ineffective Assistance of Counsel

Gore also simply alleges his resentencing attorney was ineffective for not raising the above issues, not filing proper motions in a timely manner, not getting him "screened", not negotiating a plea, and that his attorney was "racial." SAG at 1. Without more, Gore fails to inform us of the nature and occurrence of his alleged ineffective assistance of counsel claim. RAP 10.10(c). Therefore, we decline to address this issue further.[6]

---

[6] Even if we can extract the nature and occurrence of Gore's ineffective assistance of counsel claim from his bare assertions, Gore fails to show any prejudice to support his ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687 (a party alleging ineffective assistance

13

4. Judicial Bias

Gore next alleges that "the judge was prejudice [sic] for not considering DOSA." SAG at 1. However, our record shows that during resentencing on the first degree unlawful possession of a firearm conviction, defense counsel requested that a DOSA be imposed. The sentencing court denied Gore's DOSA request. Thus, this challenge fails.

5. *Brady* Violation

Gore alleges that "the prosecutor was in violation of Brady for not giving that information to my attorney." SAG at 1. We are unclear what information Gore is referring to. Because he fails to inform us of the nature and occurrence of the alleged error as required under RAP 10.10(c), we decline to address this issue further.

6. Defective Warrant and Defective Charging Documents

Lastly, we note that Gore makes several additional allegations in the "Conclusion" section of his SAG relating to a defective warrant and defective charging documents. Because Gore provides nothing more than bald assertions, we decline to address these issues further. RAP 10.10(c).

C. PRP ISSUES

In his timely filed PRP, Gore contends he was denied a fair trial based on numerous instances of prosecutorial misconduct. Specifically, Gore alleges the prosecutor improperly vouched for a witness's testimony, expressed his personal belief about a witness's credibility, argued that Gore was grooming another to engage in crime, shifted the burden of proof, and

---

of counsel must show that the alleged deficient performance prejudiced the defendant to an extent that changed the result of the trial).

admitted slides in a PowerPoint presentation.  Lastly, Gore alleges cumulative prosecutorial errors denied him a fair trial.  We disagree.

        1.       Standard of Review

       A petitioner may request relief through a PRP when he or she is under an unlawful restraint. RAP 16.4(a)-(c).  "A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'"  *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)).  The petitioner must prove the error by a preponderance of the evidence.  *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).  In addition, "[t]he petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations."  *Monschke*, 160 Wn. App. at 488; see RAP 16.7(a)(2)(i).

       In evaluating PRPs, we can "(1) [deny] the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error, (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record, or (3) grant the PRP without further hearing if the petitioner has proved actual prejudice or a miscarriage of justice."  *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011), *review denied*, 177 Wn.2d 1012 (2013).

2.      Legal Principles

A personal restraint petitioner who raises prosecutorial misconduct has the burden to prove the misconduct was either a constitutional error resulting in actual and substantial prejudice or a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). If the petitioner did not object during trial, the prosecutorial misconduct claim is considered waived unless the misconduct is "'so flagrant and ill-intentioned that it cause[d] an enduring and resulting prejudice that could not have been neutralized by a curative instruction.'" *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 143, 385 P.3d 135 (2016) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998)). Thus, to prevail in his PRP, Gore must first show the prosecutor committed misconduct. Then, if Gore objected to the misconduct during trial, he must then show actual and substantial prejudice; but if he did not object during trial, Gore must show that the misconduct was flagrant and ill-intentioned and caused him prejudice incurable by a jury instruction. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018).

We evaluate whether a claim of prosecutorial misconduct is flagrant and ill-intentioned by focusing "'less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured.'" *Id.* at 165-66 (quoting *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012)). Prosecutorial misconduct that denies a defendant a fair trial is flagrant and ill-intentioned. *Id.*

Prosecutors have "'wide latitude to draw and express reasonable inferences from the evidence'" in their closing arguments. *State v. Robinson*, 189 Wn. App. 877, 893, 359 P.3d 874 (2015) (quoting *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203, *review denied*, 176 Wn.2d

1009 (2012)). In evaluating a claim of prosecutorial misconduct, we review a prosecutor's remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

        3.      Vouching

Gore argues that the prosecutor improperly vouched for Monique's testimony as truthful in his closing argument. We disagree.

Prosecutorial misconduct by vouching occurs when the prosecutor either (1) places the prestige of the government behind the witness, or (2) indicates that information that was not presented to the jury supports the witness's testimony. *Robinson*, 189 Wn. App. at 892-93.

Here, the prosecutor argued:

> You know, [Monique] said something that was actually truthful yesterday. When confronted with text messages that reflected the defendant passing along a pill customer to his wife and when confronted with a series of text messages where the defendant and his wife were looking to buy Percocet so that the wife could give them to some unknown female, what did [Monique] say? She said, "Well, these are bad. This paints a bad picture, but it's not the whole truth. That's not all of who we are." And that was probably a truthful statement. I am sure that there is good in [Monique] and Mr. Gore. This trial is not about that. This trial is about holding the defendant accountable for the choices he made, and that's what this evidence has shown; that he made some choices dealing drugs, carrying guns, rendering criminal assistance, choices for which he must be held accountable in your verdicts.

6 VRP (Apr. 12, 2016) at 609-10. Gore did not object to the prosecutor's argument.

When read as a whole, the prosecutor's argument properly focused the jury's attention away from Monique's statement regarding the light the text messages painted her and her husband and toward the issues the State deemed important. The prosecutor had wide latitude to argue reasonable inferences from the evidence. *Robinson*, 189 Wn. App. at 893. And these statements

do not either place the prestige of the government behind the witness or indicate that information that was not presented to the jury supports the witness's testimony. Thus, Gore does not establish vouching. Moreover, Gore neither asserts nor demonstrates an enduring and resulting prejudice that could not have been neutralized by a curative instruction. *Caldellis*, 187 Wn.2d at 143. Accordingly, this claim fails.

4.      Expressing Personal Belief

Gore argues that the prosecutor improperly expressed his personal belief that Monique "is a liar" and told a "story." PRP at 4. We disagree.

It is misconduct for a prosecutor to state a personal belief as to the credibility of witnesses. *Warren*, 165 Wn.2d at 30.

Here, the prosecutor made an argument about Monique's "story." 6 VRP (Apr. 12, 2016) at 627-28. Gore did not object to the prosecutor's argument.

The prosecutor did not state his personal belief as to Monique's credibility when judged in light of the total argument; rather, it is apparent that the prosecutor was merely trying to convince the jury of the conclusion that Monique's testimony did not add up and it was up to the jury to decide if Monique's version of events was truthful. Additionally, arguing that Monique's testimony was a "story" does not amount to a "clear and unmistakable" expression of impermissible opinion. *State v. McKenzie*, 157 Wn.2d 44, 54, 134 P.3d 221 (2006). Moreover, Gore neither asserts nor demonstrates an enduring and resulting prejudice that could not have been neutralized by a curative instruction. *Caldellis*, 187 Wn.2d at 143. Accordingly, this claim also fails.

18

5.      Grooming

Gore argues the prosecutor committed misconduct by discussing "Improper Grooming" during his closing remarks. We disagree.

It is improper for a prosecutor to comment on grooming evidence if none was presented during trial and the prosecutor encourages the jury to consider grooming as a fact in evidence in reaching its ultimate conclusion about the defendant's guilt. *Phelps*, 190 Wn.2d at 164. This was not the case here.

Relating to Gore's original unlawful possession of cocaine and unlawful possession of methamphetamine charges, the prosecutor questioned Gore's claim that someone else put the controlled substances in Gore's car and commented on Gore's relationship with his nephew and his son, arguing that "the apple didn't far [sic] too far from the tree." 6 VRP (Apr. 12, 2016) at 689. Gore requested a mistrial based, in part, on the prosecutor's "apple" comment. 6 VRP (Apr. 12, 2016) at 698.

The challenged argument went to Gore's drug offense, which we reversed in *Gore*. Moreover, Gore neither asserts nor demonstrates actual and substantial prejudice. *Lui*, 188 Wn.2d at 539. Accordingly, this claim fails.

6.      Burden of Proof and PowerPoint Presentation

Gore argues that the prosecutor committed misconduct by misstating that the State's burden of proof was "Beyond A Reasonable Doubt." PRP at 7. But, the State bears the burden of proving all elements of its case "beyond a reasonable doubt." *State v. Fleming*, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018 (1997).

Here, the prosecutor argued:

19

> It is proof beyond a reasonable doubt. . . . A few things for you to keep in mind. One, it's not proof beyond all doubt. Surely we could say to you, you must be convinced beyond all doubt, but we all know almost anything beyond all doubt. There are certain things you will always have left lingering, certain unanswered questions. You may have doubts about this fact or that fact, but the question for you is whether you're convinced beyond a reasonable doubt. Your doubts become reasonable when they persist, looking at all the evidence, big pictures. That's when you have a reasonable doubt when that doubt persists, when you think about things in the big picture concept.

6 VRP (Apr. 12, 2016) at 610-11. Gore did not object. Gore does not explain how the prosecutor misstated the burden of proof and does not cite to legal authority to support his argument; therefore, we decline to address this issue further. *See In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 313-14, 422 P.3d 458 (2018) ("lack of analysis and legal authority on [an] issue renders review improper.")

Gore next argues that the prosecutor committed misconduct by using improper slides in a PowerPoint presentation during the prosecutor's closing argument. Specifically, Gore argues that the trial court should have reviewed the PowerPoint presentation; the prosecutor improperly showed the jury a murder scene, firearms, and drugs in the slides; and the prosecutor improperly showed the word "Guilty" on one of the slides.[7] PRP at 10. Gore further argues that the misconduct was so flagrant and ill-intentioned that an objection would not have cured the prejudice.

---

[7] Gore also objects to the prosecutor's use of the word "story" on one of his slides regarding Monique's testimony. PRP at 10. He claims the "Defense objected" to this testimony and the trial court sustained this objection. PRP at 10. Gore, however, does not point this court to where in the record this occurred, and the alleged objection cannot be located in the record. Moreover, we have already concluded that the use of the word "story" in the context of Monique's testimony does not amount to improper personal opinion.

Regarding the trial court's review of the PowerPoint presentation before the prosecutor's closing argument, Gore does not support his argument with any analysis or legal authority. Accordingly, we decline to address this issue further. *Meredith*, 191 Wn.2d at 313-14.

Regarding the slides showing a murder scene, firearms, and drugs, even assuming these were improperly presented by the prosecutor, Gore fails to show how these slides prejudiced him with regard to his one remaining offense for first degree unlawful possession of a firearm. We have already reversed his three other convictions. The only remaining offense is first degree unlawful possession of a firearm where the firearm was located inside the center console of Gore's vehicle.

Gore also argues the prosecutor's presentation of the slides was so flagrant and ill-intentioned that an objection would not have cured the prejudice, but he fails to explain how and does not explain why. Without more, we are unpersuaded by Gore's allegation. *See Monschke*, 160 Wn. App. at 488 ("petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations."). Accordingly, we decline to address this issue further.

Regarding the slide with the word "Guilty," although it should not be surprising to the jury when a prosecutor argues the defendant is guilty of the charged crime, the presentation of that conclusion on a slide can constitute prejudicial misconduct. *See State v. Walker*, 182 Wn.2d 463, 480, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015) and *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 712-13, 286 P.3d 673 (2012). In both *Walker* and *Glasmann*, the court found that the sensational nature of the slides was particularly problematic. *Id.* In *Walker*, the prosecutor displayed 100 slides captioned with "Defendant Walker Guilty of Premeditated Murder." 182 Wn.2d at 468. *Walker* held that by superimposing the "guilty" theme on a large number of slides,

the prosecutor conveyed a personal opinion of the defendant's guilt. *Id*. at 480. Superimposing the caption also served to alter the pictures and exhibits to which the caption was added. *Id*.

Here, there was only one slide that stated "Defendant is Guilty" with a list of the charges against Gore listed under these words. PRP Response at App. B. And there was no superimposing of the word "guilty" altering other pictures and exhibits. We cannot equate a single slide presented with the 100 slides used in *Walker*. Accordingly, Gore fails to show prosecutorial misconduct based on the prosecutor's PowerPoint presentation.

7.     Cumulative Error

Gore lastly argues that the multiple instances of prosecutorial misconduct constituted cumulative error and that the cumulative error prejudiced him. We disagree.

"Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless." *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006), *cert. denied*, 551 U.S. 1137 (2007). Without error, the cumulative error doctrine does not apply. *State v. Clark*, 187 Wn.2d 641, 655, 389 P.3d 462 (2017). Cumulative error "does not apply where the errors are few and have little or no effect on the outcome of the trial." *Weber*, 159 Wn.2d at 279.

Here, there was no cumulative error that requires reversal of Gore's conviction.

CONCLUSION

We accept the State's concession that the judgment and sentence wrongly states that Gore's conviction was the result of a plea and wrongly states the date of the current offense. We hold that the sentencing court erred in failing to conduct a comparability analysis on Gore's prior federal conviction, but the error was harmless. Thus, we affirm Gore's sentence, deny his PRP, and remand for correction of the two scrivener's errors in Gore's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Cruser, J.